## W. S. FERRIS *v.* M. J. WELLBORN.

1. WATER-COURSE. *Obstruction of.   Rights of riparian owner.*
   A riparian owner has the right to have a natural water-course which drains his lands adjacent thereto remain unobstructed and as nature made it, in its course onward through the lands of another.

2. SAME. *What constitutes.*
   And a creek which has a channel one-half a mile long, with definite bed and banks of varying width and depth, through which water is conveyed and discharged into lowlands adjacent to a running stream, though it be dry most of the time, but running when there is water to be carried off by it, is a water-course, with all of the incidents thereof.

3. SAME. *Obstruction of.   Chancery jurisdiction.*
   And if one riparian owner obstructs such a water-course so as to flood and injure another's lands drained by it, a court of chancery has jurisdiction to order the obstruction removed, to grant damages for the injury sustained, and to issue a perpetual injunction against future obstruction.

APPEAL from the Chancery Court of Noxubee County.

HON. F. A. CRITZ, Chancellor.

On September 15, 1882, Mrs. M. J. Wellborn filed this bill of complaint against W. S. Ferris. The bill, as amended, sets out that complainant has owned and cultivated for a number of years a tract of land adjoining defendant's; that both tracts are drained by a natural drain or creek known as "Prairie" or "Wet" Creek, flowing through them in a northwesterly direction, and terminating in what is known as "Plum" Creek; that in 1882 defendant, without the knowledge of complainant, began cutting a ditch along the dividing line of their lands, running from south to north, and intersecting and crossing "Prairie" Creek, thereby effectually damming it; that within about one hundred yards of the northern boundary of complainant's land, defendant abruptly terminated his ditch and threw up a levee to protect himself from the overflow of water running through the ditch; that the ditch is wholly inadequate to convey the waters received by it; that thereby complainant's land is flooded by every heavy rain, and the accumulated water becomes a rushing stream, flowing in a northeasterly direc-

tion across complainant's land; that the top soil is thereby washed off her land and ditches and holes made through and in it; and that the land is left unfit for cultivation for a long time after such floods, and the crops rendered very uncertain; that she is unable to rent such land since the ditch has been cut, but readily rented it before for two or three dollars per acre; that about thirty acres of this land has been rendered wholly valueless; and that unless this ditch is refilled and "Prairie" Creek opened, lasting and irreparable injury will be inflicted on complainant. The bill prays for a decree for damages; that the defendant be required to fill up the ditch as far as the court may determine necessary, and open "Prairie" Creek; and that W. S. Ferris and all others be perpetually enjoined from again opening the ditch.

The defendant demurred to this bill on the following grounds: 1. "Because complainant has a full, adequate, and complete remedy at law." 2. "Because the injury complained of is not shown to be irreparable, nor incapable of being removed, and can be fully compensated by an action at law."

The court overruled the demurrer. The defendant then answered denying any damage done to complainant by reason of the ditch so dug on his own premises, and also denying that "Prairie" or "Wet" Creek ever was a creek or water-course or natural drain at all, but averring that it was a low sag or marsh.

On the final hearing the Chancellor found for the complainant and ordered that the defendant open the natural drain known as "Prairie" Creek, and that the ditch cut by defendant be closed up on the north side of its intersection with "Prairie" Creek; that defendant pay to complainant fifty dollars damages; and that defendant and all other persons be forever enjoined from closing up or in any manner obstructing the natural channel, known as "Prairie" Creek.

*Bogle & Bogle,* for the appellant.

1. The gist of the allegations of the bill is, 1st. That complainant's land was drained by a creek known as "Prairie Creek," which was obstructed by defendant, and complainant's land caused to be flooded thereby. 2d. That the obstruction was a nuisance to com-

plainant and did her irreparable damage.    As to the first ground, defendant demurred because the remedy by law was complete and adequate.    The allegations of the bill are that the natural drain that was obstructed was a creek, Prairie Creek, which implies a running or living stream of water and not a mere dry ditch for draining purposes or to carry off surface water.    See Bouvier's Dictionary, title, Creek.

To such a case the act of the legislature at the session of 1884, entitled, " An Act to prevent the unlawful obstruction of watercourses," fully applies.    See Laws of 1884, page 36, chapter 31 ; also Story's Equity Jurs., § 364.

As to the second point, the allegations of the bill stated as constituting the nuisance and causing the irreparable damage are that the lands are greatly diminished in value.    This is not sufficient, in the absence of a showing that the defendant was not able to respond in damages.    High on Inj., § 34; 2 Story's Equity, § 925.

2. Ferris has the same right to the profitable use of his lands as Wellborn has to hers, and cannot be made to keep his as a watershed for her use and benefit.    *Schaefer* v. *Marthaler*, (Minn.), 26 Northwestern Reporter 726.

But independent of any question of this kind we think the decree of the Chancellor was contrary to law, even admitting all the complainant's evidence tends to show.    It reduces the question to this :  Is the lower of two adjoining landowners obliged to receive the surface waters from the upper owner to his damage, or may he refuse to receive them or divert them to protect his land, even though it cause damage to the upper proprietor ?    The rule of the common law and the civil law differs in regard to this proposition.    We think that even under the strict rule of the civil law the respondent was justified in cutting this ditch, because the evidence shows that the waters from Wellborn's land had been collected into a ditch and discharged in a body upon Ferris' land, which all the authorities say cannot be done.    But we think the better rule is that of the common law, that in the proper and necessary use of his land the lower proprietor may do as he pleases with the surface water.    He may refuse to receive it by banking

against it, or dispose of it as he pleases after it has come upon him. It is a common enemy against which all have a right to protect themselves, especially where it is necessary to the proper and profitable enjoyment of their property. This is the rule adopted by the older and most improved States, permits the largest and freest ·development of the agricultural resources of the country, and is supported by the better reasoning and weight of authority, both in this country and England. The courts holding it, so far as we have been able to ascertain, are Massachusetts, Maine, New Hampshire, Vermont, Connecticut, New York, New Jersey, Wisconsin, Indiana, Missouri, Kansas, and Ohio. See *Ashley* v. *Walcott,* 11 ·Cush. 195 ; *Flagg* v. *Worcester,* 13 Gray 603–7 ; *Frazier* v. *Brown,* 12 Ohio St. 299 ; *Parks* v. *Newburyport,* 10 Gray 29 ; *Dickinson* v. *Worcester,* 7 Allen 19 ; *Gamon* v. *Hargadon,* 10 Allen 106 ; *Gerrish* v. *Union Wharf Co.,* 26 Me. 334 ; *Bangor* v. *Lansil,* 51 Me. ·521 ; *Morrison* v. *Bucksport,* 67 Me. 353 ; *Railroad Co.* v. *Hammer,* 22 Kan. 763 ; *Gibbs* v. *Williams,* 25 Kan. 214 ; *Hoyt* v. *Hudson,* 27 Wis. 656 ; *Bowlsby* v. *Speer,* 31 N. J. L. 351 ; *Sweet* v. *Cutts,* ·50 N. H. 439 ; *Grant* v. *Allen,* 41 Conn. 156 ; *Goodale* v. *Tuttle,* 29 N. Y. 459 ; *Abbot* v. *Railroad Co.,* Sup. Ct. Mo., October, 1884 ; *K. C. & E. Railroad Co.* v. *Riley,* 33 Kan. 374 ; *Schaefer* v. *Marthaler,* (Minn.), 26 N. W. Rep. 726 ; *Wheatly* v *Baugh,* 25 Penn. ·St. 532; *Buffum* v. *Harris,* 5 R. I. 243 ; *Chatfield* v. *Wilson,* 28 Vt. 49 ; *Waffle* v. *N. Y. Central Railroad Co.,* 58 Barb. 413.

*Thomas J. O'Neill,* for the appellee.

The claim of appellee for relief in her bill is based upon the charge that defendant without her consent changed a water-course to prevent its continuous flow through his land to "Plum" Creek, ·damming up the channel, and providing no way of escape for the water, thereby flooding and washing her lands and causing her great injury. Is the ditch or drain a water-course?

In the case of *Stanchfield* v. *City of Newton,* decided by the Supreme Court of Massachusetts in June, 1886, and reported in vol. 2, No. 13, of the New England Reporter, the sixth charge given for plaintiff was as follows:

"To constitute a water-course in law, it is not necessary that it

should at all seasons of the year contain water; but if it has a regular channel and well-defined banks, discharging itself into some stream or body of water, it is sufficient in law to constitute it a water-course, although the quantity be very small and the flow not constant." In passing upon the charge the court say : " In answer to the sixth request, the presiding judge correctly defined a water-course." Citing *Dickenson* v. *Worcester*, 7 Allen 19 ; *Parks* v. *Newburyport*, 10 Gray 28.

As a right incident to the property, and one of which he cannot be deprived but by grant, the owner of land situated upon a stream has a right to its natural flow ; it is his right that it shall flow off his land upon the land of his neighbor below in its accustomed place and at its usual level.    *Tillotson* v. *Smith*, 64 Am. Dec. 355.

*Burwell* v. *Hobson*, 65 Am. Dec. 247.  It is there said : " Riparian proprietor has no right to direct stream, or any part of it, from its accustomed course, to the injury of other persons."

In *Burden* v. *Stein*, 62 Am. Dec. 758, it is held that diversion of water of creek in violation of right of complainant entitles him to an injunction, *even though* he suffer no actual damage thereby.

In *Neal* v. *Henry*, 33 Am. Dec. 124, it is declared to be a *nuisance* to dam up a stream so as to cause pools of stagnant water to stand on or near the lands of another, and thereby poison the atmosphere and generate disease.

In *Buddington* v. *Bradley*, 26 Am. Dec. 386, it is declared that the riparian proprietor has the right to the general flow of the water in its natural mode and course.

The same doctrine is held in *Omelvany* v. *Jaggers*, 27 Am. Dec. 417, and the question fully considered.

The like views are presented by Justice Simrall in the opinion delivered by him upon reargument in *Miss. Cent. R. R. Co.* v. *Mason*, 51 Miss. 246.

CAMPBELL, J., delivered the opinion of the court.

The case made by the bill is sufficient to maintain the jurisdiction of the chancery court, and the demurrer was properly overruled.

The proof is that Prairie Creek is a natural channel, one-half or three-fourths of a mile long, with defined bed and banks, of varying width and depth, through which water is conveyed and discharged into the low land adjacent to Plum Creek. It is undoubtedly a water-course whenever there is water to run in it, and the fact that it is most of the time dry or not running is not enough to deprive it of the character of a water-course, with its incidents, among which is the right of the riparian owner to have it remain as nature made it as a drain for the adjacent land.

*Affirmed.*