Belzoni Drainage Commission et al. v. Osamus Winn.

[53 South. 778.]

1. Constitution, Section 90, Par. Q. *Special laws. Drainage. Natural drains.*

The Acts of 1910, chapter 183, a special and local law, creates a special drainage district with the object and purpose to provide adequate and effectual drainage by artificial drains, canals, ditches or other drainage facilities and provides for a commission to develop a drainage system by canals and by improving and shortening all natural drains, held that the words "Natural Drains" so used meant natural water courses including creeks, streams or rivers, and that the act was therefore violative of Constitution, section 90, paragraph "Q" prohibiting the legislature from making special laws relating to water courses, fences and stock.

2. Water Course.

A natural channel with defined bed and banks of varying width and depth through which water is conveyed and discharged is a "water course," and the fact that it is most of the time dry or not running, is not enough to deprive it of the character of a "water course."

3. Part of Act Unconstitutional.

Where the whole purpose of an act depends upon one feature of the act and this feature conflicts with the Constitution the whole act must fail.

4. Suit by Taxpayer.

A party liable to taxation by the carrying out of a drainage scheme under an unconstitutional statute may sue to restrain the enforcement of the act.

Appeal from the chancery court of Washington county.

Hon. E. N. Thomas, Chancellor.

Suit by Osamus Winn against the Belzoni Drainage Commission. From a judgment overruling a demurrer to the bill defendant appeals.

The facts in the case are sufficiently stated in the opinion of the court.

*R. B. Campbell,* for appellant.

The act does not violate section 90, paragraph (q). It does not relate to water courses within the purview of that paragraph. Water courses are not mentioned in the Act. It provides for artificial ditches, for the purpose of effecting a system of drainage; and, they are intended to carry water, to be sure, and water will course its way down them, but they are not water courses. according to the ordinary meaning of the term. A water course is defined as "a natural stream of water usually flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water." 30 Am. and Eng. Ency. Law, 347.

The framers of the Constitution must have been familiar with the fact that drainage districts had been created, and drainage systems established, and were, of necessity, local in character, and created by local laws; and, if they had intended to forbid the creation of such ditches by local laws, they would have enumerated them among the other local laws designated in section 90,. and would not have left it to a mere inference that they were included in paragraph Q thereof, as "relating to water courses."

Not having specified drainage districts and drainage among the things prohibited in section 90, it is fair to assume that they were among other matters which were left to the legislature to be provided for, either by general or local laws, as it might determine.

The only expression in the act that could possibly be stretched to mean, or relate to, a water course, are found in sections 7 and 8, wherein direction is given as to how the survey of the district, and of the several units, is to be made, and what the maps thereof are to show. In section 7, after requiring the survey to be made so

as to show the best methods of effecting the drainage by artificial canals and ditches, it is further required to show the best method of effecting the drainage "by shortening and improving all natural drains in said district;" and in section 8, the maps of the several units, showing the system of drainage therein, are required to show, among other things, "improved natural water channels."

Granting that these, quoted expressions in themselves are within the purview of section 90, paragraph (q), they may be stricken out, without affecting the remaining portions of the act; and the remaining portions will constitute a complete and harmonious law, capable of accomplishing the legislative purpose, in adopting the act.

Furthermore, the appellee has shown no right to attack the act on the ground that it violates paragraph (q) of section 90, nor that he will be injured in any way by an enforcement of the law. His attack is general and not allowable, under the general rule upon the subject hereinbefore cited.

*Wynn and Watson,* for appellee.

The act is unconstitutional, because violative of section 90 (q), relating to water courses, for section 7 of this act contemplates the dealing with natural drains, and the whole act shows that natural drains in this act means water courses, and that water courses have to be dealt with to effect the drainage contemplated in the act. The attempt to avoid the contention made in *James v. Tallahatchie Drainage Commission,* by using the words "natural drains" instead of "waterways" is ineffective; it is simply an attempt to violate the Constitution by the use of words. The court judicially knows the geography of the country, and that the water drained into the main drains must be carried by these main drains into a water course, either the Yazoo river or the

Sunflower river, in order to be carried away.   The act might just as well have the words water courses instead of natural drains; when the court judicially knows that the act is abortive unless something is done relating to water courses, and the main thing to be done under the act is to carry the water into a water course.   The Constitution uses the words "relating to water courses." It does not say "interfering with," "damming up," "stopping," but "relating to."   Now to illustrate the soundness of our position, drainage districts have been formed in Bolivar county, precipitating rapidly—and so much more rapidly—into the Bogue Phalia the water therefrom  (Bogue Phalia running through Bolivar and Washington counties), that realizing that Bogue Phalia will not be able to carry off the water thus so much more rapidly precipitated into it, so as not to overflow the lands adjoining it in Washington county, these same people who have organized districts in Bolivar county come down into Washington county and say, we desire you people in Washington county to organize a district in Washington county so as to have the Bogue Phalia cleaned out and so that the water thus precipitated so much more rapidly will be carried off and there will be no question of liability of our districts for damages.

It may be contended that the right to drain into a water course is a right which exists by law, but whether it exists by law or not the Constitution has provided that no special law relating thereto shall be enacted. Thus it will be seen that this act, in effect, relates to water courses, and that the lands cannot be drained without the emptying the waters from the main drains either into the Yazoo or Sunflower rivers, and when that is done then a thing very material relating to water courses is done.

*A. J. Rose,* for appellee.

One part of a statute may be enforced as constitutional, and another be declared inoperative and void, because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see and to declare, that the intention of the legislature was that the part pronounced valid should be enforceable, even though the other part should fail. To hold otherwise would be to substitute for the law intended by the legislature one they may never have been willing by itself to enact. *Poindexter* v. *Greenhow,* 114 U. S. 270, 305, 29 L. Ed. 185, 198.

The rule is: "If the law is unconstitutional in part, there is no further presumption attaching to it, and the rest of the act is only good, if it is a complete scheme of itself, and the court can say that, if the scheme is so complete that the legislature would have passed the bill, without the unconstitutional part of it." *Johnson* v. *State,* 38 L. R. A. 375; *Riccio* v. *Horoken,* 63 L. R. A. 490; *Fant* v. *Gibbs,* 54 Miss. 411, 412.

MAYES, C. J., delivered the opinion of the court.

This case involves the constitutionality of chapter 183 of the Laws of 1910. A statement of the case need not be here made, since it appears so clearly in the pleadings, and the case is here on bill and demurrer. The above act is a local and special drainage law, and created a drainage district known as the "Belzoni Drainage District," applying to certain parts of the county of Washington. Osamus Winn, a resident and taxpayer in the drainage district created by the act, brings this suit for the purpose of enjoining the enforcement of the act, alleging its unconstitutionality in many respects, only one of which we notice. The bill filed by Winn was demurred to, and on the hearing the chancellor overruled

the demurrer, and from this judgment of the court an appeal is prosecuted.

Section 1 of the above act creates the drainage district and fixes the boundaries. Section 2 provides that the object and purpose of creating the district is to provide adequate and effectual drainage by artificial drains, canals, ditches, or other drainage facilities, and to provide ways and means necessary to carry out same, etc. Section 7 of the act provides that the commission selected as provided by the act shall cause the chief engineer to make surveys of the entire territory in the drainage district, for the purpose of developing the topography of the land, and its facilities and possibilities for drainage, and the best method of effecting same by artificial canals and by shortening and improving all natural drains, etc. Section 8 provides that the chief engineer shall also develop, by the surveys, the natural drainage units in the drainage district, etc. Section 10 provides that after the survey has been made, together with report of estimate of cost by the chief engineer, etc., showing the main trunk drain or drains, and the natural drainage units in the district, fixing and defining boundaries, etc., the commission shall proceed to have the work done. Section 90, par. "q," of the Constitution of the state, provides that "the legislature shall not pass local, private or special laws in any of the following enumerated cases, but such matters shall be provided for only by generals laws, viz., laws relating to stock laws, water courses, and fences."

The question in this case is whether or not this local act can be said to authorize the drainage commission to deal with water courses. In three different places in this act it authorizes the drainage commission to deal with "the natural drains," "all natural drains;" and section 7 authorizes the survey for the purpose "of shortening and improving all natural drains," thus giving effect to the declared purpose of section 2, providing

for adequate and effectual drainage "by artificial drains, canals, ditches, etc., or other drainage facilities," meaning, of course, "all natural drains." The act is incomplete, and no feature of it can be enforced successfully, unless the drainage commission has the right to deal with and improve the natural drains in the district. The whole purpose of the act depends upon this, and if this feature of the act conflicts with the Constitution the whole act must fail, since without this power it is inseparable from the other provisions and wholly ineffective. In other words, the power to deal with natural drains is the warp and woof of the whole act, upon which all else depends. Webster's International Dictionary defines a "drain" to be a water course. Indeed, in the definition of the word there could be no other practical comprehension of it. A "natural drain" can be nothing else but a natural water course. Every creek, stream, brook, or river is included within the term "natural drain." In volume 10, Ency. Law, it is said: "The term 'drain' has no technical or exact meaning. As generally understood, it means any artificial channel, or drainage, for the removal of water, etc." The section of the Constitution in question has no application to local laws providing for artificial drains; but the act precludes the idea that it should operate only on artificial drains, since it provides for the changing of "all natural drains," all natural water courses. In 14 Cyc. of Law, p. 1023, "drain" is again defined to be an artificial channel, or trench, etc.

What is a water course? In the case of *Ferris* v. *Wellborn*, 64 Miss. 29, 8 South. 165, Judge Campbell, for the court, settled the law of this state as to this question. On page 34 of 64 Miss., page 165 of 8 South., in the above case, speaking for the court, he says: "The proof is that Prairie creek is a natural channel, one-half or three-fourths of a mile long, with defined bed and banks, of varying width and depth, through which water

is conveyed and discharged into the low land adjacent to Plum creek. It is undoubtedly a water course whenever there is water to run in it, and the fact that it is most of the time dry or not running is not enough to deprive it of the character of a water course, with its incidents, among which, is the right of the riparian owner to have it remain as nature made it as a drain for the adjacent land." This case was cited with approval in the case of *Rait* v. *Turner,* 74 Kan. 101, 85 Pac. 934, 6 L. R. A. (N. S.) 157. The question of what constitutes a water course has been a perplexing one for the courts, and there is a varying line of decisions on this subject. It is not our purpose to attempt any reconciliation of the authorities. Under every decision and under every definition, "all natural drains" must be held to include natural water courses, as well as swales or ravines which might not be held to be water courses. This act of the legislature violates paragraph "q" of section 90, and is void.

The appellee is a taxpayer in the district created by it, and, unless enforcement of the act is prohibited, he will be compelled to pay out money under a void law, and, of course, he can maintain this suit.

*Affirmed and remanded.*