## M. E. HALEY *v.* DRAINAGE COMMISSIONERS OF LEFLORE COUNTY.

[55 South. 353.]

1. DRAINAGE DISTRICT. *Petition to establish. Sufficiency. Bonds. Interest. Code* 1906, *sections* 1684, 1703, 1706, 1709. *Acts* 1906, *chapter* 132. *Constitution* 1890, *section* 90.

Under Code 1906, section 1684, and Acts 1906, chapter 132, section 3, requiring that a petition to create a drainage district, "should set forth or show the names of the owner of the several tracts of land mentioned therein to be embraced in the district." A petition which in one paragraph describes the land to be embraced within the district and in the next paragraph recites that the land embraced in the proposed district belonged to the following named persons with the postoffice address of each following his name and then recites a list of all landowners with their postoffice address, without stating what particular land was owned by each, was a sufficient compliance with the statute.

2. BONDS. *Interest. Code* 1906, *sections* 1703, 1706, 1709. *Acts* 1906.

Sections 1703 and 1706 of Code 1906 and the corresponding sections of acts 1906 authorize the payment of interest on drainage bonds, and section 1709 of Code 1906 and the corresponding sections of acts 1906 provides both for the payment of this interest annually and for the collection of the money necessary so to do by assessment made by the board of supervisors.

3. CODE 1906. *What included.*

The Code of 1906 consists of the matter included in the enrolled bill containing same filed in the office of the secretary of state and this enrolled bill includes chapter 39, and the fact that this chapter was omitted from section 1, chapter 1, of Code, which section designated what chapters should constitute the Code, makes no difference.

4. *Constitution* 1890, *section* 90.  *Acts* 1906, *chapter* 132.  *Code* 1906, *sections* 1682 *and* 1727.  *Local laws.*

   Constitution 1890, section 90, prohibiting local laws in regard to watercourses, has no reference to artificial watercourses and does not invalidate acts 1906, chapter 132, nor Code 1906, sections 1682 and 1772, because counties are exempted from the provisions of the act, as it is immaterial whether these statutes are local or general.

APPEAL from the chancery court of Leflore county.

HON. M. E. DENTON, Chancellor.

Suit by M. E. Haley against the Drainage Commissioners of Leflore county.  Decree dismissing the bill and plaintiff appeals.

The facts are stated in the opinion of the court.

*Gwin & Mounger,* for appellee.

Conceding, for the time being, the validity of the law under which the order of the commissioners and the decree of the chancellor levying said assessment and providing for the issuance of said bonds were made, we submit that the chancellor and the said commissioners were without jurisdiction and without authority to pass said order and decree, for the reason that the original petition filed in said matter praying for the organization of said drainage district does not set forth or show the names of the owners of the several tracts of land mentioned therein, to be embraced in said district.  Said petition set forth that "the proposed drainage district embraces the following lands in Leflore county, Mississippi, to wit:  Sections 19, 20, 21, 22, 27, 28, 29, 30, 31, 32, 33, 34, in T. 19, R. 2 W., also sections 3, 4, 5, 6, 7, 8, 9, 10, and 15 in T. 18, R. 2 W."  In the next paragraph said petition recites that "the land embraced in the proposed drainage district are owned by the following named persons, with the postoffice address of each following his name," and thereupon follows the list of all landowners with their postoffice addresses, but said petition does not

show which landowners owns any particular tract or part of said land.

The statute providing for the filing of said petition (Sec. 1684, Code 1906, sec. 3, chap. 132, acts of 1906), provides that said petition shall set forth the proposed name of said drainage district, the necessity for the same," with the description of the lands to be included in said drainage district, of the name of the owners, when known, together with the postoffice address of such owner, if the same can be ascertained."

We submit that this statute contemplates and requires that the owner of each several tracts of land shall be given in said petition as the owner of such tracts, and that this petition does not meet with this requirement, and as this is a proceeding *in invitum* the requirements of the statute must be fully met.

It is contended that section 1711 of the Code of 1906, section 30, chapter 132, of the Laws of 1906, obviates this imperfection in the organization of the district, and that the judgment of the chancellor providing for said assessment is conclusive that all prior proceedings were regular and according to law, but we submit that this statute could not have this effect if the court was without jurisdiction in the matter. It will be borne in mind that this is a proceeding by which it is sought to force supposed benefits upon the landowners, benefits unsought by many of them, and to force them to pay for the same, against their will, by confiscating and selling their land in case of their failure or inability to pay. Every step provided by the statute must be complied with, every requirement of the statute must be fully met in such a proceeding. "Whenever a new or special power is given by legislation, it must appear upon the face of proceedings thereunder that the statute granting the power has been strictly pursued, otherwise the proceeding will be void." *Brown* v. *Owen*, 75 Miss. 324. And if the legislature had the power to enact such a statute at all, it

certainly did not have the power to make any decree or judgment or order in such a proceeding conclusive of facts contrary to the facts shown by the record in the proceeding; and this petition is an essential part of the record and that part of the record which gave jurisdiction to the court, if it had jurisdiction.

The decree of the chancellor and the order of the commissioners making said assessment, both of which were made on the 2d day of September, 1910, provide that the said assessment and the several installments thereof shall bear interest at the rate of six per cent per annum from date until paid paid.

The statute providing for said assessment (Section 1703, Code of 1906, section 22, chapter 132, acts 1906) provides that "the assessment and the installments thereof shall draw interest at the rate of six per cent per annum from the time of the confirmation until paid."

A deed of trust which secures the payment of a promissory note which bears interest from date until paid, could not beforeclosed until the maturity of the note, although it provides for its foreclosure upon default in payment of interest. There could be no default in the payment of said interest until the maturity of such note, because the interest would not be due until the date of the maturity of the note.

Yet, the said order and decree provide for the issuance of bonds bearing interest payable annually, although there is no provision in the statutes, nor in said order or decree, for any tax levy or assessment for the payment of said interest annually.

It is contended that section 1709, Code 1906, or section 28 of chapter 132, acts of 1906, provides for the levy of an annual tax by the board of supervisors. These sections simply provide for the report by the county treasurer of the bonds outstanding.

No where is the power conferred upon the board of supervisors to levy any tax and the power to levy such

a tax cannot be implied. If it is implied, when is it due and payable, and how much does it amount to? It cannot be said that the amount is the amount of the interest due annually, because the cost of collecting the tax would not be provided for, nor would the treasurer's commissions be included, and if these costs of collection and handling are deducted the amount would be insufficient to pay the interest. It is contended that the legislature intended to confer this power upon the board of supervisors by these sections of the drainage acts. We are unable to say what the legislature intended to do in this regard, but we confidently contend that the legislature did not confer this power upon the board of supervisors and that said board is without authority so to do. We submit that if the legislature intended to confer this power, it is a case of failure to carry out its intention similar to the parts of the Code chapter upon municipalities relative to one municipality extending its boundaries so as to include the territory of another municipality, which were passed upon in the case of *Village of Gandisi v. Town of Seminary*, 75 Miss. 315. This being true, bonds bearing interest payable annually are not in conformity to the provisions of the statute nor are they issued in pursuance of the power conferred on the drainage commissioners by the statute, and we submit that the said commissioners can issue bonds only as provided by the statute and that any bonds issued by them which are not in strict conformity to the statute are invalid as to both the principal and interest.

We submit that the drainage law, as printed in the Code and as embodied in chapter 132 of the acts of 1906, is invalid and not a part of the public statutes of the state of Mississippi, and that there is no provision of law for the issuance of said bonds or for the creation of said district as attempted in this matter.

The court is presumed to know what the public statutes are, and it requires no evidence to show the court

what is embraced in said statutes. It will look to the
enrolled bills and duplicate of the Code in the secretary
of state's office in order to inform itself in case of doubt.
*Nugent* v. *Jackson,* 72 Miss. 140; *Hunt* v. *Wright,* 70
Miss. 298; *Telegraph Co.* v. *Shannon,* 91 Miss. 476; *Tele-
graph Co.* v. *Morgan,* 92 Miss. 108.

The memoranda signed by the Code Commissioners
printed on the second page of the Code of 1906, immedi-
ately following the preface, and the foot note inserted
by the commissioners immediately following section 1 of
said Code, show that chapter 39 entitled "Drainage Dis-
trict" is not enumerated in section 1 of said Code nor
is it named or mentioned therein.

The act adopting said Code describes the Code so
adopted as "The Mississippi Code of 1906 of the public
statute laws of the state of Mississippi, compiled by au-
thority of the legislature by A. H. Whitfield, T. C. Catch-
ings and W. H. Hardy, Commissioners, and reported to
the legislature by them, and revised, amended and
adopted ·by the two houses of the legislature, an en-
rolled draft (of) which has been prepared by the joint
revision committee of the two houses appointed for that
purpose."

The court knows that said chapter 39 entitled "Drain-
age District," as printed in the Code, was not compiled
by said commissioners and reported to the legislature
by them. Therefore, said chapter 39 is not described
and pointed out as a part of said Code in said act of
adoption. We must, therefore, look to section 1 of chap-
ter 1 of the Code to determine of what the Code consists
and we find that said chapter 39 is not designated as a
part of the Code in said section 1.

It is contended that said chapter 39, although not
named or enumerated in section 1 of said Code, is con-
tained in the duplicate of said Code in the secretary of
state's office and that, therefore, the same is a part of
said Code. We submit, however, that if this is true, the

court has no right to presume that the legislature made a mistake and that the legislature had the right, in adopting said Code, to omit from said Code any part of said duplicate that it saw fit. We submit that section 1 of chapter 1 of said Code shows definitely and certainly what the legislature intended to be the Code of Mississippi and that unless the legislature is presumed by the court to have made a mistake chapter 39 is not a part of the Code of Mississippi.

It is contended that, in so much as chapter 132 of the laws of 1906 was an act of the legislature, adopted at the 1906 session of the legislature, it is still in force, although it might not have been embodied in the Code. The contention is that the last clause of section 13 of the act adopting said Code provides that general laws adopted at the said session of said legislature should not be repealed. We submit that said chapter 132 of the acts of 1906 was repealed on the 1st day of October, 1906, by section 3 of the said Code. Said section 13 of the said act adopting said Code provides that all laws of a general character not brought forward and embodied in the Code shall be repealed, but that this shall not apply to any act of the legislature adopted at the 1906 session thereof, but we submit that this does not affect the question of the repeal of the said statute. We do not claim that said statute was repealed because it was brought forward and embodied in said Code, but our contention is that it was revised and acted upon in secs. 371 to 391 of the said Code of 1906.

In said sections 371 to 391 provision is made for the channelling of streams and watercourses, for the drainage of lands and the protection of the same from wash and overflow, for the appointment of commissioners to do said work, for the levying of taxes to pay for the same and for the issuance of bonds for such purpose. The subject-matter is to be determined with reference to the substantive thing done by the act and not by the

mode of exercising the power conferred (*City of Vicks-burg* v. *Ins. Co.*, 72 Miss. 67), and we submitt hat the subject-matter is the same in these sections 371 to 391 of the Code and chapter 132 of the Laws of 1906.

It is contended that sections 371 to 391 provide only for the channelling of streams or natural watercourses and that chapter 132 of the Laws of 1906 provides only for drainage through and by means of artificial drains. But we submit that this is not correct. Section 3 of said chapter 132 states the purpose of the district to be organized to be "to establish in said district a combined system of drainage or protection from wash and over-flow." Section 12 of said chapter 132 provides that the commissioners shall exclude any part of the lands de-scribed in the petition "which do not drain into said watershed," and section 31 provides that the district when organized shall have the power of "surveying—repairing and altering, enlarging, cleaning, and main-taining any drain." "Protection from wash and over-flow" from what, but from the natural watercourses? How can "a combined system of drainage or protection from wash and overflow" be established in a district except by dealing with and channelling and controlling the natural streams or watercourses in such district? What "watershed" is meant if not the natural water-shed of the district? What drains are to be surveyed, altered, enlarged, cleaned and maintained if not the natural watercourses?

In 14 Cyc. 1052, c., it is said, "Most statutes contem-plate that natural streams may be straightened, widened and deepened," and we submit that this statute so con-templates, and that, as is said in *Belzoni Drainage Com-mission* v. *Winn*, 53 So. Rep. 778, "the act is incom-plate and no feature of it can be enforced successfully, unless the drainage commission has the right to deal with and improve the natural drains in the district. . . . In other words, the power to deal with natural drains is

the warp and woof of the whole act, upon which all else depends." We, therefore, submit that the subject-matter in said chapter 132 and said sections 371 to 391 of the Code is the same, and that said chapter 132 having been approved on April 12th, 1906, was repealed by section 3 of the Code of 1906.

Section 1727 of the Code and section 46 of the said chapter 132 provide that the said drainage laws shall not apply to the counties of Sharkey, Issaquena, Lauderdale, Amite, Wilkerson, Warren, Chickasaw, Tippah and Union.

Insomuch as the statute does not affect the entire state, but affects only a part of the state, we submit that both said chapter 132 of the Laws of 1906 and said chapter 39 of the Code of 1906 are local or special laws.

Most of the states have constitutional provisions regulating and prohibiting the enactment of local, or private or special laws relating to certain subjects, or providing that all laws of a general nature shall have a uniform operation throughout the state, and in interpreting the constitutional provisions the courts of the several states have repeatedly defined general laws and local and special laws.

In *Sherlock* v. *Alling,* 44 Ind. 184, the court said: "All general laws extend over all territory over which the state has exclusive or concurrent jurisdiction."

In *Wanser* v. *Hoos,* 60 N. J. Law 482, 38 A. 4449, 64 Am. St. Rep. 600, the New Jersey appellate court said, "When a law in terms is to operate only in specific localities of the state satisfactory reasons must be found to exclude it from the constitutional prohibition against local laws," and in *Van Cleve* v. *Parsaic Valley Sewerage Comm's.,* 71 N. J. Law 574, 108 Am. St. Rep. 754, the same court said, "A law is special in a constitutional sense when by force of an inherent limitation it arbitrarily separates some persons, places or things from

those upon which but for such separation it would oper-
ate."

In *Rambo* v. *Larrabee*, 67 Kan. 634, 73 p. 915, it is
held that a law of a general nature which does not have
a uniform operation throughout the state is unconstitu-
tional.

In *State* v. *Sexton*, 11 S. D. 105, 75 N. W. 895, it is
held that a statute which provides a special proceeding
applicable to only a part of the counties is unconstitu-
tional.

In *Bray* v. *Board of Choses Freeholders*, 50 N. J. Law
82, 11 A. 135, it was held that a law providing for a pub-
lic road in each county is unconstitutional because one
country was excepted from its operation.

In *State* v. *Buckley*, 60 Ohio St. 273, 54 N. E. 272, it is
said that where a statute required by the Constitution
to have uniform operation throughout the state ex-
pressly excepts from its operation one or more cities or
counties, it is void.

In *State* v. *Buckley*, 17 Ohio Cir. Ct. R. 86, it is said
that, "A general law is one which relates to or binds
all within constitutional or territorial limits of the juris-
diction of the law making power. A law is not general,
in any correct sense of the term, but is special, where it
is suspended in one locality where exists a proper sub-
ject-matter on which to operate, but is in full force in
another locality of exactly the same kind. The uniform-
ity is in the sense that the law shall operate the same
in all parts of the state and must embrace all, and ex-
clude none whose condition and wants render such legis-
lation equally necessary or appropriate to them as a
class."

In 36 Cyc., p. 992, c., the rule is stated thus: "It is
said that the constitutional provisions are satisfied by
statutes applying uniformly within a class of persons
based on a reasonable distinction, or objects of a reason-

able class, and operating the same on all parts of the state under the same circumstances.

In *City of Vicksburg* l. Ins. Co., 72 Miss. 71, this court pointed out the distinction between a general law and a local or special law, and held that a law which conferred a power upon all cities of a certain class or kind was a general law, and that if it did not apply to or affect all of that class it was a local law.

We have already shown that said chapter 132 of the Laws of 1906 in said chapter 39 of the Code of 1906 are laws relating to watercourses.

We, therefore, submit that said statutes violate section 90, paragraph q., of the Constitution of the state which provides that the legislature shall not pass local private or special laws relating to watercourses.

We, therefore, respectfully submit that the decree of the court below should be reversed and a decree rendered in this court reinstating and perpetuating the injunction restraining said commissioners and said drainage district from issuing any bonds and that the said decrees and orders levying said tax and making said assessment should be cancelled as clouds upon complainant's title to said land and decreed to be null and viod.

*E. D. Stone,* for appellees.

In this cause the following contentions were raised by the appellant in the original bill:

1st. There was no law to authorize the organization of a drainage district as had been done in the matter of the Code drainage district.

2nd. If there was a law, it was a local law applying to watercourses and therefore unconstitutional.

It is true there were one or two other questions raised and they were subsidiary to one or the other of the diffrent questions, and it seems plain to the appellees that if we had a law that did not fall under condemnation of paragraph q. of section 90 of the Constitution of the

state of Mississippi, everything done by the drainage commissioners was lawful, because the laws of drainage districts were carefully followed in these proceedings. We submit to the court that chapter 39 in the Mississippi Code of 1906 on the subject of drainage district is the law of the state of Mississippi for the reason that it forms a part of the enrolled draft of the said Code which is filed in the office of the secretary of the state. See sections 1 and 2 of the act of adoption of the Code approved April 21st, 1906. Section 1 of chapter 1 of the Code is nothing more than a table of contents of the Code and cannot be controlling in the matter. In the *Nugent case,* 72 Miss. 140, it is expressly held that the law is what is on file in the secretary of state's office, and every-thing else bearing on the subject of the law, gives way to what we find in the office of the secretary of state. If chapter 39 was named in section 1 of chapter 1 of the Code, it would not have been the law unless it had appeared in the main body of the Code. Chapter 139 is named in section 1, chapter 1 of the Code; but sections 4879 A. and 4897 inclusive were not the law, although these sections were a part of chapter 139 of the Code as passed, because the sections did not appear in the enrolled draft of the Code filed in the secretary of the state's office. And 4898 was a part of the law, because it was in the enrolled draft of the Code.

Should the court hold that chapter 39 is not a part of the Code, appellees contend that chapter 132 of the Laws of 1906 which is almost exactly the same as chapter 39, would authorize all that they have done in the present proceedings and that same was not repealed by the act of adoption or section 3 of the Mississippi Code of 1906, because same would be saved from repeal by section 13 of the act of adoption which is as follows:

"Sec. 13. On and after the first day of October, 1906, all laws of a general character not brought forward and embodied in the Mississippi Code of 1906 shall be there-

after repealed; but this shall not apply to any act of the legislature adopted at the present session thereof.

There can be no merit in the contention of counsel for appellants that the petition must set out the owner of each and every separately described piece of land, because it is evident in the law that there would be several different owners in the district, and section 1687 expressly provides that the notice to be given of the filling of the petition for a drainage district shall state the general description of the land proposed to be included in the district and the boundaries of said district. The record in this case will show that the land was named by sections and parts of sections, when only a part of any section was included, and if a man owned a part of a section, he certainly had full and complete notice when the notice was given that all of the sections in which he owned land was included.

Another contention raised by appellants, that the drainage commissioners had no authority to issue interest coupons payable annually is wholly and entirely without merit. Section 1703 and section 1706 both provide for the payment of interest at not more than six per cent per annum. Then in addition to that, section 1703 provides that for interest assessments to be paid thirty days after same shall be due. The clerk shall certify said assessment to the sheriff and tax collector and he is required to proceed for their collection. Then to make the law full and complete and to furnish a procedure section 1709 provides that the amount of interest due on the bonds shall be levied by the board of supervisors each year.

As to the objection raised that section 1727 exempting certain counties from the operation of this law makes this a local law, I think this objection is not well taken as it is not possible to my mind that because a few isolated counties, hardly any of them contiguous, were left out of the law and the entire state otherwise left in it

would make it local law. But the language of paragraph q. of section 90 does not apply to drainage laws, only to "stock law, watercourses and fences," and we are to look to the wording as well as to the meaning of the drainage law. The Code, section 1693, provides that, "Drainage districts may hereafter be organized in this state for the purpose of reclaiming wet, swamp and overflowed lands for · agricultural and sanitary purposes in the manner following." Nothing here is said about ˙watercourses and nothing that gets as nearly to the subject of watercourses as the expression "all natural drains," which caused the court to declare the Belzoni drainage law unconstitutional.

As much as I would like to agree with distinguished counsel on the other side, it is impossible to do so as to the meaning of section 31 of the act of 1906, being section 1712 of the Code, because it says, "The commissioners may, after the organization of said district, do any and all acts that may be necessary in and about the surveying, laying out, constructing and repairing, altering, enlarging, cleaning, protecting and maintaining any drain or ditch or other work for which they have been appointed." This plainly applies only to such ditches as they may lay out under section 1692 and shall have been approved under section 1696. This law no where requires the commissioners to use the natural drains as was required in the Belzoni drainage law. Section 31 of the act of .1906, and section 1712 of the Code must be referred back to sections 2 and 3 of the act of 1906 and sections 1683 and 1684 of the Code, and we will see that these sections do not contemplate the use . of natural drains, but always seems to contemplate the construction of drains and ditches for the purpose of reclaiming wet swamp and overflowed lands for agricultural purposes. And when the maintenance of drains and ditches is mentioned in 1684 of the Code which might be applied to natural drains it expressly says "to maintain and

keep in repair any such drains and ditches heretofore
constructed." Showing that it is only the drains to be
constructed, and not natural drains that our drainage
law has in contemplation. Although a natural water-
course may be straightened or deepened as incident to
the drainage of a certain territory this will not affect the
law, or nullify it, if this change of the natural stream
was only an incident to the drainage of the wet or
swampy district. In an *Indiana case,* 128 Indiana 399,
27 N. E. 748, the court says, "the primary object of the
drainage laws is the reclamation of wet lands, and the
power to alter and straighten watercourses (although
expressly conferred by statute) is a mere incident; and
a proceeding to establish a drain where the primary
purpose is to straighten the watercourse and the drain-
age is a mere incident, is not within the jurisdiction con-
ferred on the courts." We take it that the converse of
this would be true, that is that where the object of the
proceeding was to reclaim the wet land, and the straigh-
tening of a natural drain was only an incident to re-
claiming the land, then it would be in the power of the
commissioners, acting under the law, to straighten a nat-
ural drain, and this would have been so held by the
Indiana court. There is another point in this decision
that I wish to call to the court's attention and that is
that the power to alter and straighten watercourses was
expressly conferred by statute in the Indiana law on
drainage and no such power is conferred by shapter 39
of the Mississippi Code of 1906. The channelling of
streams is covered by sections 371 *et seq.* of the Mississ-
ippi Code of 1906 and drainage is an incident, or may
be an incident, to the channelling of streams under this
section. These sections contemplated the making of
channels to prevent the overflow of streams that some-
times overflow, and where it is especially provided that
they shall follow, as nearly as practicable, the natural
course of the stream. And further provides for the

opening of "new channels." This requirement as to the following the natural channel is no where required in the drainage law; this channelling law, section 371 *et seq.*, can apply to a territory that is only occasionally over-flowed, but the law on drainage can only apply to land that is wet and swampy to such a degree that it has to be improved or reclaimed for agricultural and sanitary purposes. The drainage law is clearly for the habitually wet and swampy land and has no bearing on water-courses, although as a matter of economy, it might be best to follow them in making a drainage; and to pre-vent damage to adjacent landowners that might be pre-vented from closing the natural watercourse in a drain-age district. The channelling law, 371 *et seq.* of the Code, is a law where a natural channel is a necessity for the operation of the law. The commissioners being re-quired to follow the natural course of the stream, but the drainage law does not require a stream; in no place does it (371 *et seq.*) contemplate repairing, extending or maintaining such ditches as may have been con-structed. It is a maxim of construction that all laws must be upheld where it is possible to uphold both of them. And it has been made so plain that the drainage laws refer to wet and swampy land, and the channelling law refers to land that may be overflowed sometime although not necessarily wet and swampy. It is possible for both laws to be maintained, one to channel streams, and the other to reclaim wet, swampy land for agricul-tural and sanitary purposes. It has been held that drainage laws are based on the benfit to public health, sanitation, or other public welfare and unless such a rea-son exists, the proceedings are not properly brought under drainage laws, 145 Ind., p. 372; 26 Mich., p. 22; 17 Cent. Dig. 1539, sec. 2. Nor does a drainage law author-ize the draining of public meandered lakes, that is a chain of lakes, 76 Minn. 286, 79th N. W. 112. But both

of these cases could have been upheld under a channel-
ing law.

Another reason why this law, chapter 39 of the Code
of 1906, should be upheld is from the  fact that chapter
132 of the Laws of 1906 went into effect on April 12th of
that year, almost five years ago, and since that time
there have been quite a number of drainage districts
organized in the state of Mississippi; and more espec-
ially is this the case in the delta section of the state.
Leflore county having five districts in operation, in two
of which the system of drains and ditches have been
completed, and in all of which the contracts have been
let and the work is in progress. In the county of Boli-
var, we are informed that there are several districts in
operation, one of which wes reviewed, as to the legality
of its organization, by this honorable court in the case
of *Wilkinson* v. *Lee,* 51 So. 718. In this district, after
the decision of that case, the district was able to sell its
bonds to the amount of about two hundred thousand
dollars as the commercial world believed that the law
had been upheld. Since that time a number of drainage
district bonds have been sold in that and other counties,
the law has been acted on for nearly five years, property
rights have been affected, contracts entered into and a
great deal of work done, taxes paid, and the supreme
court having upheld the law in the case above cited as to
at least three of its questionable points, we feel like it
would be a calamity now to hold that the drainage law
is a watercourse law, and declare it unconstitutional.
In view of the fact that this chapter has been acted upon
for several years in view of the obligations entered
into on the faith of this law, and especially of the decis-
ion above mentioned, we think the reasoning of the court
in *Cohn* v. *Smith,* 64 Miss. 816, should be followed. And
the law of *state decisis* should prevail.

We confidently submit this case to the court and ask
an affirmance of the decision of the chancellor below.

Chapter 39 of the Mississippi Code of 1906 is the law because it forms a part of the enrolled draft of the Code in the office of secretary of state. . The questions of procedure under the law are not ineffectual because the law as written was followed. Chapter 39 of the Code is not a local law, but should the court so hold it to be a local law, it would still not be unconstitutional because it is. not a law relating to watercourses.

*W. M. Cox*, for appellee.

It is contended in this case that chapter 39 of the Code of 1906 is a local and not a general act, for the reason that several counties are excepted from its operation. 2nd. That being a local act, it is void because in conflict with paragraph "q" of section 90 of the Constitution, which forbids the legislature to enact any special or local law relating to fences, watercourses or stock laws, and 3rd. That it never became a law because not in the enrolled draft deposited in the office of the secretary of state to be incorporated in the Code.

If the view be adopted that chapter 39 is a local act, I insist that it does not conflict with paragraph "q" of section 90 and is not unconstitutional and void. I invoke thoroughly established principles of constitutional construction to support which no citation of authorities is needed. They are recognized by all courts, and have been accepted by none more fully than by our own.

To set aside a statute because unconstitutional, involves perhaps the most delicate responsibility with which a court can be charged. A statute which is not clearly unconstitutional, which is not unconstitutional beyond all reasonable doubt, must be upheld. All legal intendments are in its favor. The presumption is that the legislature has not designed to transcend and has not, in fact, transcended its powers. If the statute is open to two constructions, by one of which it would be given an operation violative of constitutional inhibition,

and by the other of which it would be given an operation, even though much restricted, fully within legislative competence, the latter construction must be adopted.

The courts will sanction the work of the legislature as far as possible, and effectuate its purpose fully if this can be done, and if not fully, then as far as it can be done without a clear and palpable violation of the Constitution.

An examination of chapter 39 discloses that it confers no powers whatever to deal with natural watercourses; but that it is designed solely to provide that the creation of artificial channels for the drainage of wet swamp and overflowed lands.

Section 1683 shows the purpose of the act to be the reclaiming of wet, swamp and overflowed lands, for agricultural and sanitary purposes, which is a most enlightened and wholesome public policy, to be encouraged and promoted in every way possible.

Section 1683 provides for the organization of "drainage districts for the construction of darins or ditches across the lands of others for agricultural and sanitary purposes, or to maintain and keep in repair any such drains or ditches, heretofore constructed, or to establish in such district a combined system of drainage or protection from wash or overflow for agricultural and sanitary purposes, and construct and maintain the same by special assessment upon the property benefited thereby."

Section 1686 provides that such system shall consist in the first instance of a system of main drains and ditches for main outlets for all lands of said proposed drainage district.

Section 1706 provides that the drainage engineer shall lay out the main ditches.

Section 1711 provides for a liberal construction of the act to promote ditching, drainage and reclamation of wet, swamp and overflowed lands.

Section 1712 provides that commissioners shall keep drains open in order to thoroughly drain lands.

Section 1713 provides for lateral ditches and tile drains.

Section 1718 provides for use of ditches already con-structed.

All these provisions relate not to natural water-courses, but to canals, ditches and artificial drains. The only seeming exception is section 1722 which provides for the removal of bridges where ditches cross roads, railroads and turnpikes. But even this does not neces-sarily involve the doing of any work upon streams as a part of the drainage scheme. It is a well-known fact that roads, turnpikes and railroads in building over overflowed and swamp ground very often build bridges for passage of overflow water where there are no nat-ural watercourses; and that they often cross ditches and canals which require bridges, and which said ditches and canals might require enlarging.

No power is given or attempted to be given to ob-struct watercourses, to divert them, to shorten them, or to diminish their flow. So far as can be gathered from the act they are to be left exactly as nature made them. It will not do to say that as an incident to the system or artificial drainage which alone is contemplated by chap-ter 39, natural watercourses will in some way be affected. That may be true in some cases, but it is not necessarily true. It is a matter of common knowledge of which the court will take judicial cognizance that there are in the delta and in the valleys of many of our streams large bodies of swamp and overflowed lands that have no drainage by natural watercourses whatever. The water which falls upon them or floods them in overflow can es-cape only by evaporation or percolation. For such areas the statute in question is especially adapted, and as ap-plied to them is absolutely free from constitutional ob-jection. Nor do I admit that in other cases, even though

the putting into operation of the scheme of drainage provided for in chapter 39 might incidentally affect watercourses, this possible result would defeat the statute. If under color of the statute the commissioners should proceed to create such a system or artificial drains as would necessarily destroy the natural drains, or as would impair the value of streams for agricultural or mechanical purposes, or for navigation, the said commissioners would be acting *ultra vires* and could be restrained by appropriate process by the courts.

The statute simply makes it possible for a group of proprietors to do toward the drainage of a given area of land precisely those things which a single proprietor owning the whole could now do as a matter or right without any aid from the statute, no more and no less.

This court has already declared through Chief Justice Mayes in the Belzoni drainage case, reported in 53 South. Rep., that paragraph "q" of section 90 of the Constitution has no application to local laws providing for artificial drains, then it is impossible for human ingenuity to draft one.

It seems scarcely necessary to argue that section 39 is not rendered nugatory as a piece of legislation merely because it does not appear "in the enrolled draft deposited in the office of the secretary of state." It is a part of the legislation of the session of 1906, and it was not necessary for any of the legislation of that session to be embodied in the Code. Section 13, page 138 of the Code, expressly saves all the legislation of that session from repeal. Besides, if the act be special or local it would be saved from repeal regardless of the time of its enactment.

SMITH, J., delivered the opinion of the court.

The drainage commissioners of Leflore county, being about to issue and sell bonds of the Code drainage district, appellant filed her bill in the court below to enjoin

such issuance and sale. From a decree dismissing the bill, this appeal is taken.

Appellant's first contention is that the chancery court was without jurisdiction to create this drainage district, for the reason that the original petition praying for the creation thereof does not "set forth or show the names of the owners of the several tracts of land mentioned therein to be embraced in said district," as provided by section 1684 of the Code, and by section 3, chapter 132, of the acts of 1906. These sections provide that the petition shall set forth the proposed name of the drainage district, the necessity therefor, with the description of the lands to be included in said drainage district, of the name of the owners when known, together with the postoffice address of such owners if the same can be ascertained. This petition in one paragraph described the land to be embraced within the district, and in the paragraph next following recited that the lands embraced in the proposed drainage district were owned by the following named persons, with the postoffice address of each following his name, and then follows a list of all landowners, with their postoffice address, without stating what particular land was owned by each landowner. This we think was a sufficient compliance with the statute.

Appellant next contends that these bonds have attached to them annual interest coupons, that the commissioners are without authority to issue bonds providing for the payment of interest annually, and no power is anywhere vested for the levying of the tax necessary for the payment of this interest. This position is not tenable. Sections 1703 and 1706 of the Code and the corresponding sections of the act of 1906 authorize the payment of interest on these bonds, and section 1709 of the Code and the corresponding section of the act of 1906 provide both for the payment of this interest annually and for

the collection of the money necessary so to do by "assessments" made by the board of supervisors.

Appellant's next contention is that chapter 39, Code of 1906, is no part of the public laws of the state, for the reason that this chapter was omitted from section 1, chapter 1, of the Code, which section designated what chapters should constitute the Code; that chapter 132 of the Laws of 1906 has been repealed by implication by sections 371 to 391, inclusive, of the Code; and that consequently we have no law authorizing the creation of drainage districts of the character of the one here in question. The Code consists of the matter included in the enrolled bill containing same filed in the office of the secretary of state, and this enrolled bill includes chapter 39. There is, therefore, no merit in this contention of appellant.

Section 90, paragraph "q," of our Constitution, provides that the legislature shall not pass local, private, or special laws relating to watercourses, and section 1727 of the Code and section 46 of chapter 132 of the acts of 1906 exempt the counties of Sharkey, Issaquena, Lauderdale, Amite, Wilkinson, Warren, Choctaw, Tippah and Union from the provisions of this statute; and appellant next contends that these statutes are local, relate to watercourses, and therefore violate this section of the Constitution. This section of the Constitution, as was held in *Belzoni Drainage Commission* v. *Winn*, 53 South. 778, deals with natural, and not artificial, watercourses. The statutes under consideration confer no power upon the commissioners to deal with natural watercourses, but are designed solely for the purpose of creating artificial channels for the drainage of wet, swamp, and overflow lands. It is immaterial, therefore, whether these statutes are local or general.

*Affirmed.*