H. W. CRENSHAW ET AL. *v.* STATE OF MISSISSIPPI EX REL.

[58 South. 219.]

CONSTITUTION 1890, SEC. 90, PAR. Q. *Special Laws. Drainage. Natural Water Courses. Ch.* 147, *Acts of* 1908.

Acts of 1908, Ch. 147, is a special and local law creating a special drainage district, with the object and purpose to provide adequate and effectual drainage by artificial drains or "other drainage facilities" and for shortening and improving the "natural channels and water ways" in said district, and is therefore violative. of Constitution of 1890, Par. Q, prohibiting the legislature from making special laws relating to water courses, fences and stock.

APPEAL from the circuit court of Tunica county.

HON. SAM C. COOK, Judge.

This was a *quo warranto* proceeding by the state of Mississippi on the relation of W. A. Alcorn, Jr., district attorney, against H. C. Crenshaw and others. From a judgment granting the writ, defendants appeal.

The facts are sufficiently stated in the opinion of the court.

*Dinkins & Caldwell* and *J. W. Cutrer,* for appellants.

*Julian C. Wilson* and *Oscar G. Johnson,* for appellee.

No brief of counsel on either side found in the record.

Argued orally by *J. W. Cutrer,* for appellant.

Argued orally by *O. G. Johnson* and *Julian C. Wilson,* for appellees.

McLEAN, J., delivered the opinion of the court.

This is a writ of *quo warranto,* brought by the district attorney against the officers of what is known as the "Tallahatchie Drainage District." It is necessary

to consider only one of the very many interesting questions which this record presents, as this one question is decisive of the case.

In 1908 the legislature of this state passed what is known as the act creating the Tallahatchie drainage district in this state. Ch. 147, p. 147, Acts 1908. The object and purpose of this suit is to test the constitutionality of that act. The act by its express provisions applies to the county of Quitman, and certain parts of the counties of De Soto, Tate, Tallahatchie, Tunica, and Coahoma, and by no sort or kind of reasoning can this act be rescued from being a local act. Sec. 90 of the Constitution of 1890 provides that: ''The legislature shall not pass local, private or special laws, in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.: . . . (q) Relating to stock laws, watercourses and fences.'' Section 2 of the act provides that: ''Be it further enacted that the object and purpose of creating said drainage district is to provide adequate and effectual drainage for the lands thereof, by artificial drains, canals, ditches, or other drainage facilities.'' Section 6 provides that said commission shall cause its chief engineer to inaugurate and complete a system of surveys to cover the entire territory of said drainage district. Said surveys shall be made so as to develop the topography of the land ''and its facilities and possibilities for drainage, and the best method to effect the drainage of said entire drainage district and all of its parts, by artificial canals and by ditches, and by shortening and improving the natural channels and waterways in said district.'' Section 7 provides that said chief engineer ''shall also develop by said surveys the natural drainage units in said drainage district, . . . and shall make a map of each of said drainage units, showing thereon the system of lateral drains, ditches, or improved natural water channels,'' etc.

It is therefore perfectly manifest from this act that "improved natural water channels" and "the natural channels and waterways" and "other drainage facilities"—that is, "other than artificial drains, channels, ditches"—are to be dealt with by this commission. After a very careful examination of this act, we are driven to the conclusion that, so far as the proposition now under consideration is concerned, there is practically no difference between this act and the act of the legislature (Ch. 183, Laws of 1910) creating what is known as the "Belzoni Drainage Commission." This latter act received a most careful consideration by this court, and it was held in *Belzoni Drainage Commission* v. *Winn,* 98 Miss. 359, 53 South. 778, that the Belzoni commission was violative of paragraph "q," Sec. 90, of the Constitution of 1890. We do not know of anything that can be said to what has already been said by this court in *Belzoni Drainage Commission* v. *Winn, supra,* except to emphasize this proposition: In *Ferris* v. *Wellborn,* 64 Miss. 29, 8 South. 165, in defining a watercourse, this court said: "The proof is that Prairie creek is a natural channel, one-half or three-quarters of a mile long, with defined bed and banks of varying width, through which water is conveyed and discharged into the lowlands adjacent to Plum creek. It is undoubtedly a watercourse whenever there is water to run into it, and the fact that it is most of the time dry and not running is not enough to deprive it of the character of a watercourse, with its incidents, among which is the right of the riparian owner to have it as nature made it as a drain for the adjacent land." This decision was rendered at the October term, 1886, of this court, and within less than four years thereafter, the constitutional convention of 1890 convened, and inserted in that instrument the provision hereinbefore referred to. It is to be presumed, and conclusively presumed, that the constitutional builders that builded that instrument did so with

a full knowledge of what is meant by "watercourses" in this state; and, however this much vexed question may be decided in other jurisdictions, we are constrained to the conclusion that the term "watercourses," as named in the Constitution, covers the definition given in *Ferris* v. *Wellborn, supra.*

Upon the authority of *Belonzi Drainage Commission* v. *Winn.* 98 Miss. 359, 53 South. 778, the case is affirmed. *Affirmed.*