### R. F. LEARNED ET AL. *v.* DUNBAR HUNT ET AL.

1. CHANCERY JURISDICTION. *Nuisance, continuous or constantly recurring.  Damming of drain.  Injunction to restrain.*

   Where an injury resulting to a particular person from a nuisance is manifest and continuous or constantly recurring (as where a bayou or other natural outlet which serves to drain his land has been dammed, and thus caused to flood his land), and the right in such person to have the same abated is clear, a court of equity will grant the appropriate relief, without requiring that the injured party shall have first established the injury by an action at law.

2. DECREE. *Form of.  When defendant cannot complain at.  Injunction against damming stream.*

   H. brought his bill against L., complaining that L. had so obstructed a natural stream or drain that the overflowing waters of a certain river could not run off as they were accustomed to do, and praying a perpetual injunction against L. to prevent him from so doing in the future. On the hearing the Chancellor granted the injunction to restrain L. from interfering with the stream in any way that will " cause injury to complainant, specially as set forth in the bill." *Held,* that L. cannot complain of uncertainty in the decree because it does not absolutely prohibit him to use the stream in question, as it is to his advantage to be permitted to use the stream, so long as he does not injure H. by preventing the overflowing waters from running off the land of the latter.

APPEAL from the Chancery Court of Jefferson County.

HON. LAUCH McLAURIN, Chancellor.

Dunbar Hunt, J. F. Gilliam, D. P. Mullins, J. D. Frasier, William George, Miss Mildred Scott, Mrs. Julia Robb, and Miss Mary Heckler brought this bill in equity against R. F. Learned, M. Holmes, F. Fisher, Henry Wilson, and Jacob Wagner. The prayer of the bill is that the defendants be perpetually enjoined

from obstructing, by locks or dams, the natural flow of water through what is known as "Isenhood Bayou."

It appears that the complainants own plantations in a certain bend of the Mississippi River, and that this river frequently overflows and inundates their lands. It is alleged in the bill that "Isenhood Bayou" is a natural outlet or drain by which such overflowing waters of the Mississippi return to that river at a point below, and that if this bayou be closed or obstructed in any way the waters stand upon the plantations for a long while and greatly injure them.

The defendants deny that they obstruct in any way the flow of the waters through "Isenhood Bayou," but admit that they have placed locks and dams in a certain artificial drain or canal near by which is their own property, built by them, and used to float down logs, and is not a natural outlet or drain. The evidence as to the identity of the canal with bayou was conflicting.

The Chancellor found "that Isenhood Bayou as set forth in the bill of complaint, and the canal or float-ditch set forth in the defendants' answer is one and the same stream or outlet; and that said stream or outlet is a natural outlet and not an artificial one, and that the damming up of said Isenhood Bayou is a private and public nuisance, and causes damage to complainants as set forth in their bill. It is therefore ordered, adjudged, and decreed that the injunction issued on the 25th day of August, 1883, restraining the said defendants from obstructing or damming or otherwise interfering with a certain water-course or outlet from the Mississippi River known as Isenhood Bayou, so far as to cause injury to the complainants specially, as set forth in their bill of complaint, be and the same is hereby made perpetual." From this decree the defendants appealed.

*Nugent & Mc Willie,* for the appellants.

1. The case presented for the consideration of the court was too doubtful to justify interference with the enjoyment by appellants of their property which has been fairly acquired. In *Green* v. *Lake,* 54 Miss. 544, the court said: "Generally a court of equity will not entertain a bill until the right of the complainant has

been established at law. *If the right is not controverted or not clear it will refuse relief, until the fact that a nuisance exists has been established at law.*" And again: "Irreparable injury lies at the foundation of relief in equity; injury so great as to be incapable of compensation in damages. *Equity will not relieve if the injury be doubtful, eventual, or contingent. Nor ought so peremptory an interdict be laid on the defendant's use of his property if the evils which are said to exist may be obviated by proper precautions.*" * * * *

"A Chancellor ought to be well satisfied that the grievance is serious and well founded, and that there is no remedy short of the cessation of the lawful use of property before he will abate it by injunction. * * * If the grievances can be removed by the aid of science and skill, a court of equity will go no further than to require those things to be done."

The Chancellor ought to have proceeded very cautiously in this case. It cannot be said that it is not doubtful. The facts are not definitely ascertained, the right of the appellees is not clearly established, and equity can only grant relief when the facts are clearly made out by determinate and satisfactory evidence. Story's Eq. Ju., §§ 924 a, 925, 925 f; *Burnham* v. *Kempton*, 44 N. H. 92, 101.

2. The final decree in this case enjoins the appellants from obstructing or damming or otherwise interfering with a certain watercourse or outlet from the Mississippi River, in Jefferson County, known as Isenhood Bayou, so far as to cause injury to complainants specially. The decree also adjudges that Isenhood Bayou and the float ditch are one and the same; but the question as to the extent to which the appellants may dam or obstruct the float ditch in the furtherance of their own enterprises is left entirely in doubt. They are commanded not to obstruct so far as to cause special injury, and it is utterly impossible for them to know how this decree is to be observed and respected. That they have the right to dam and obstruct the ditch in order to accumulate a head of water for the floating of logs is unquestionable. The court says that they may do this, but not so as to injure the complainants. We respectfully

submit that the decree decides nothing, and that the case stands now exactly as it did when the complainants' bill was filed.

We refer on points discussed to the following additional authorities : *Barkley* v. *Wilcox,* 40 Am. Rep. 519 ; *Hughes* v. *Anderson,* 44 Am. Rep. 147 ; *Proctor* v. *Jennings,* 3 Am. Rep. 240 ; *Swett* v. *Cutts,* 9 Am. Rep. 276 ; *Dumont* v. *Kellogg,* 18 Am. Rep. 102 ; *O'Connor* v. *R. R. Co.,* 38 Am. Rep. 753 ; *R. R. Co.* v. *Stevens,* Ib. 139, 144.

*W. L. Nugent,* for the appellants, made an oral argument.

*Claude Pintard,* for the appellees.

1. Have complainants made such a case as would entitle them to the interposition of a court of chancery ? Or are they relegated to a court of law, to a suit or suits annually for damages ? The principle of injunctive relief against a *tort* is that whenever damage is *caused* or *threatened* to property *admitted* or legally adjudged to be the plaintiff's, by an act of the defendant, *admitted* or legally adjudged to be a civil wrong, and such damage is not adequately remediable at law, the inadequacy of the remedy at law is a sufficient equity, and will warrant *an injunction* against the commission or continuance of the wrong. Adams' Eq., 3d Am. ed., p. 456, and note 1, p. 459.

Every trespass is not a foundation for an injunction when it is contingent and temporary. But if it continues so long as to become a nuisance the court of chancery will interfere. Drury on Injunctions 237 ; 43 Miss. 748 at bottom and 749 at top.

So an irreparable injury may be restrained by injunction.

By irreparable injury is not meant such injury as is beyond the possibility of repair, or beyond possible compensation in damages, nor necessarily great injury or great damage, but that species of injury, whether great or small, that ought not to be submitted to on the one hand, or inflicted on the other, and which, because it is so large on the one hand or so small on the other, is of such constant and *frequent recurrence* that no fair or reasonable redress can be had therefor in a court of law. Wood's Law of Nuisances, §§ 778, 785, 786, 787, and notes and authorities cited.

The authorities, and they are legion, all go to show that when

the damages are *irreparable, or the nuisance complained of is a continuous or constantly recurring grievance,* then equity will interfere by injunction. If the allegations of the bill of complaint in this cause are *not denied* by the answer, and the proofs do not show that the injury complained of is irreparable, or that it is continuous, and a constantly recurring grievance, then it would be impossible to make a case that could be brought within equity jurisdiction before the issue was settled at law.

" The cases when an injunction *will not be granted* are where the parties are in dispute concerning their *legal* rights until the right is established at law." 3 Wait's Actions and Defenses 685, § 9, and numerous cases there cited.

2. Appellants complain of the decree rendered against them. How would they have it? There are but two ways in which the decree could be made, one would be to enjoin them from interfering or in any manner obstructing this water-course, the other in the manner in which it was rendered. The first would not be proper, for the reason that they have a right to use this water-course for any purpose they choose *so long as they do not damage their neighbors.* And if the decree had gone to this extent, they would then have a right to complain and appeal to this court to modify it, and it would have been modified to the extent of the present decree.

*Frank Johnston,* on the same side.

The law of the case presents no questions of difficulty.

Assuming the facts are proven according to the conclusions reached by the Chancellor, the jurisdiction of the court of equity, and the special relief granted in this particular case rests upon the following well-established principles of law :

1. Where an injury as such from its nature is not susceptible of being adequately compensated by damages at law, a court of equity will always entertain jurisdiction. *Whitefield* v. *Rogers,* 26 Miss. 85.

2. Where the injury from its continuance or constant repetition must occasion a constantly occurring grievance. Ib.

3. These two propositions are propositions technically independent of the question springing out of the doctrine of nuisance, and

apply to the class of injuries indicated. *Bishop* v. *Rosenbaum*, 58 Miss. 84; 2 Story's Eq. Juris. 928.

4. Without a remedy in equity, the complainants' only relief would be constantly repeated actions at law for the repeated trespasses and injuries, and this ground itself is essentially distinct from the question of a remedy at law. *Coit* v. *Horn*, 1 Sandf. Ch. 1; High on Injunctions, §§ 12 and 53.

5. So that, aside from the question of a public nuisance, the jurisdiction in equity is clear.

But where the nuisance is public, and the complainants suffer some special injury, or where the nuisance is private, with special injury, and this of a recurring kind, equity is the peculiar forum for relief. Wood on Law of Nuisances 769 *et seq.*

The jurisdiction, says the author just quoted, is predicated on the broad ground of preventing irreparable injury, interminable litigation, a multiplicity of actions, and the protection of rights. Ib., par. 769.

See the views of Lord Eldon in note 1 to par. 769, Wood's Law of Nuisances, and authorities quoted in the note.

6. It is urged for the appellants that the complainants are estopped by aquiescence.

There is nothing in the testimony that warrants the idea of either a license or an acquiescence, and it would be idle to argue that mere delay in filing the bill is an acquiescence.

7. The rule in respect to acquiescence stated favorably for appellees must really come up to all the essentials of an estoppel.

*Frank Johnston* also made an oral argument.

COOPER, C. J., delivered the opinion of the court.

The character of the injury inflicted upon the complainants' land by reason of the obstruction by the locks and gates placed by the defendants in the stream, by which the overflowing waters of the river are returned to it, warrants the interposition of a court of equity to prevent the injury by the writ of injunction. It is true that ordinarily the complainant is required to establish the fact of injury by an action at law before a court of equity will interfere,

but where, as in this case, the injury is manifest, the right clear, and the nuisance a continuing one or of a constantly recurring character, and satisfaction can only be had by repeated suits at law, a court of equity is the appropriate tribunal to relieve, since once for all the right may be established and protected. Wood on Nuisances, chapter 25.

We concur in the finding of the Chancellor that "Isenhood Bayou" and the canal used by the defendants as a floatway for their logs are in the main identical. It is, we think, probable that in many parts of the canal departures have been made from the channel of the bayou. But that it was formed by digging out and straightening the old bayou is established by the decided preponderance of the evidence. The appellants cannot complain of the form of the decree. It is to their advantage and not prejudice that it is so drawn as to permit them to use their canal to the greatest possible extent without infringing upon the right of complainants to have free drainage. The exercise of ordinary prudence and watchfulness by the defendants will enable them to keep within the terms of the decree by opening the channel whenever it is necessary to permit the escape of the waters in its rear ; if they in the honest attempt to obey the decree cannot use their locks and gates without endangering the property of others, they can evade all danger and responsibility by removing them from the channel and permitting the unobstructed flow of the water, which the complainants are entitled to require if protection can be secured in no other manner.

*The decree is affirmed.*