## Board of Supervisors of Quitman County *v.* Carrier Lumber Company.

[60 South. 326.]

1. Levees. *County supervision. Powers. Causeway. Water and water courses. Chancery. Jurisdiction. Constitution 1890, section 170. Code 1906, section 4449. Irreparable injury. Injunction.*

   While the board of supervisors is invested by section 170 of the Constitution with full jurisdiction over roads and bridges, it is not invested with the power to build levees across natural watercourses whereby the natural flow of the water will be prevented.

2. Code 1906, Section 4449. *Causeways. Levees.*

   Section 4449, Code 1906, refers to work on causeways. A causeway, however, is different from a levee. It may be necessary in building roads through lowlands to raise the roadbed and when so raised it is known as a causeway; but even in the case of a causeway going through such lands, when it reaches a bayou, a bridge should be constructed over the bayou for the continuance of the road.

3. Water and Watercourses. *Chancery. Injunction.*

   The chancery court has jurisdiction to grant an injunction to restrain a person from damming a bayou or other natural outlet, where the injury resulting from such obstruction is manifest and continuous or constantly recurring and the right to relief in the matter is clear.

4. Same.

   While ordinarily the complainant is required to establish the fact of injury by an action at law before a court of equity will interfere, yet where the injury is manifest, the right clear, and the nuisance a continuing one, or constantly recurring and satisfaction can only be had by repeated suits at law, a court of equity is the proper tribunal to relieve.

5. Same.

   Where the owner of land will suffer individual and special damages from overflow caused by the damming of a natural water course he has the right to proceed to abate what might be claimed to be a public nuisance.

6. Same.

> Under our Constitution and laws, neither municipality nor counties,
> . nor the sovereign state itself, can damage the humblest individual,
> by damming a natural watercourse, except in the lawful exercise
> of the right of eminent domain, and then not without previous
> compensation ascertained by lawful methods and this is true re-
> . gardless of the benefit to the public at large. ·

Appeal from the chancery court of Quitman county.
Hon. M. E. Denton, Chancellor.

Bill for injunction by the Carrier Lumber & Manu-
facturing Company against the board of supervisors of
Quitman county, and others.    From a decree overruling
a motion to dissolve an injunction, defendants appeal.

The facts are fully stated in the opinion of the Court.

*Mack & Donaldson* for appellant.    .

Boards of supervisors are vested with full jurisdiction
over roads, ferries and bridges by the Constitution of the
state.    Constitution, section 170.    And this jurisdic-
tion may be regulated by statute but cannot be taken
away.    *Board* v. *Arrighi*, 54 Miss. 668; *Paxton* v. *Baum*,
59 Miss. 531; *Monroe County* v. *Strong*, 78 Miss. 565;
*Seal v. Donnelly*, 60 Miss. 658.    It is the general rule and
universally accepted that such boards have discretionary
powers over grading, draining and repair of highways.
22 Cyc. 884.    And this discretion is specifically vouch-
safed to them by our statutes and fundamental laws.
Code 1906, sections 4415, 4441.    Where a board of super-
visors or other public officials have been intrusted with
discretionary powers, their action in the exercise of this
discretion will not be controlled by injunction, except
upon a showing of fraud or bad faith.    22 Cyc. 879;
· 22 Cyc. 884; 22 Cyc. 745; *Monroe County* v. *Strong*, 78
Miss. 565; *Rotenberry* v. *Yalobusha Co.*, 67 Miss. 470.

It is also said in the case of *Monroe County* v. *Strong*,
supra, that "courts will not interfere with boards of super-

visors in the lawful exercise of the jurisdiction committed to them by the law, on the sole ground that their actions are characterized by lack of wisdom or sound discretion,'' citing *Rottenberry* v. *Yalobusha County*, supra.

If the board is exercising the powers confided exclusively to its jurisdiction by our Constitution and laws, the want of proper discretion and sound judgment in the board, can never warrant an invasion of its jurisdiction by another tribunal, whose discretion and judgment touching the exercise of the powers committed to and conferred upon the board, may not be harmonious with the mere discretion and judgment of such board. Granted the exclusive power in the board of supervisors over the subject matter of this controversy, and it must follow that the exercise of the power must rest, likewise, exclusively in the discretion of the tribunal clothed with the power. *Rottenberry* v. *Yalobusha County*, supra.

It is insisted that even the state in its sovereignty, nor any municipality nor board of supervisors, can take or damage the property of its humblest individual without compensation, etc. which is altogether true and is part of our constitutional law and by statute the manner of determining such damage, if any, has been provided. Code 1906, sections 4402-4405. And this court has held that these statutes are not unconstitutional because it imposes the duty upon the owner to institute proceedings. *Cage* v. *Trager*, 60 Miss. 563. In many respects the case last cited is like the instant case, and if the court was correct in that case and others of like nature, we feel confident that nothing will be found in this case to cause the application of a different principle. See also *Ham* v. *Levee Board*, 35 So. 943. And if it is insisted, as appears to be, that the damage, if any must be ascertained and paid or tendered before the work can proceed, we have only to say that in this instance, such a requirement would be a vain thing, for no man could estimate in advance of the building of the fill, any remote or con-

sequential damage that might accrue by reason of the work being done. And although the word "damaged ' has been inserted into the constitution of 1890, it by no means follows that consequential damage, such as would result to these appellees, could be foreseen, computed or estimated. The rule is somewhat different in cases where there is no entry or actual taking and the courts have held that in cases of this character, boards of supervisors are not charged with notice that any damage will accrue and compensation cannot thereupon be "first made or tendered" when such damage if any, must of necessity be remote and purely speculative or consequential. 15 Cyc. 781, and cases cited. Speculative or uncertain consequential damage will not entitle a person to injunctive relief, even as against a private individual. Mc*Chutcheon* v. *Blanton,* 59 Miss. 116. And where compensation adequate can be made, equity will not interfere. 22 Cyc. 761; 22 Cyc. 879; 53 Am. Rep. 454; 3 L. R. S. 449-445.

The only damage which appellees claim will result is from the overflow waters of Coldwater River, and overflow waters are universally classed with surface waters. 13 L. R. A. 394; 27 Am. St. Rep. 246; 31 Am. Rep. 114; 6 L. R. A. (N. S.) 136; 87 Am. Dec. 625. By the common law which is the law in Mississippi, surface waters may be lavied against as the common enemy. Am. & Eng. (1 Ed.), 963, *et seq.* And persons may improve their lands by grading or filling up low places and it makes no difference if it changes the flow of surface water. 38 Am. Rep. 139; 53 Am. Rep. 581; 6 L. R. A. (N. S.) 136; Franham on Waters, 1724, *et seq.*; 24 L. R. A. (N. S.) 214. Legislative authority secures more freedom from liability than individuals enjoy. *Moyer* v. *New York, C. & H. R. R. Co.,* 88 N. Y. 356. Even though an individual might be enjoined, and even though appellees may have their action for damages herein, equity will not interfere by injunction to restrain a public improvement by the board

of supervisors exercising authority vested in them by the Constitution and statutes of the state. 6 Sol. 640; 67 L. R. A. (N. S.) 362. Appellee seems to rely on the case of *Cannon* v. *LeFlore County*, 33 So. 81, but a careful reading of the opinion in that case discloses nothing except that the court adjudged the proceedings of the board to have been illegal. The orders of the board in letting the contract in the Cannon case were directly attacked, whereas in the case at bar the orders of the board are not attacked, the sole ground for relief relied upon, being the right of the board to consequentially damage parties residing miles below and on the oposite side of Coldwater River by levying or filling a depression on the west bank of Coldwater River known as Bookter Bayou and thus confining the waters of said River to their natural course.

It may be contended that the board nor any other person has a right to obstruct any natural watercourse. But if this be true, who may complain if a watercourse shall be obstructed? Surely not one whose damage, if any, cannot by any chance or manner of reasoning be more then speculative, remote and consequential, and whose property is miles below and across the river from the stream alleged to have been obstructed.

Aside from the question of damage, if any, should the court hold that injunctive relief will be granted in cases of this character, boards of supervisors, and even the state itself, would be forever hampered and perennially met with injunctions whenever and wherever any public work or improvement was undertaken. The law affords an adequate, ample and sufficient remedy at law for whatever damage may be sustained. Code 1906, section 4402, 4414, 4415. And the courts have held that if notice is not had by the party damaged he may sue for his damage. *Rainey* v. *Hinds County*, 78 Miss. 308. But in the absence of an actual taking or entry upon the land the damage could not be ascertained before the work was done

and injunction will not lie to interfere with a public work or improvement.   6 So. 640, *supra*; 67 L. R. A. 362, *supra*.

And this is especially true where property is not actually taken or entered upon.   28 L. R. A. 362, *supra*; 15 Cyc., p. 781.   For the reasons herein above set forth and because of the authorities herein cited, we respectfully submit that the cause should be reversed.

*Montgomery & Montgomery* for appellants.

Now our contention is that the board of supervisors is vested by law with full jurisdiction over these matters. That they have a right to build bridges across bayous on the public road, or, in lieu, of bridges, to build causeways or levees, more durable and economical, for the public interest, with proper culverts or openings therein for the flow of the water.   That they are peculiarly vested with discretion in these matters, and while, if the work is improperly done, the proper openings are not left for the flow of the water, the board may not be enjoined from doing it, but anyone who is injured may proceed in the proper forum, to-wit:   In the court of law by the proper proceedings to recover his damages.   The Constitution, section 170, confers upon the board of supervisors full jurisdiction of roads, ferries, and bridges.   This jurisdiction may be regulated by law, but cannot be taken away.   *Jefferson County* v. *Arrighi*, 54 Miss. 668; *Paxton* v. *Baum*, 59 Miss. 531; *Seal* v. *Donnelly*, 60 Miss. 658. It is true that these authorities hold that the manner of their exercise of their jurisdiction over roads, ferries, and bridges, may be provided by law, but so long as they have exercised this jurisdiction in the manner provided by law, they cannot, we submit, be restrained from doing it simply because some land owner at a distance from the road may be damaged by the exercise of their jurisdiction. Section 4449 of the Code, provides how bridges and cause-

ways shall be built. Section 4400 of the Code provides how roads may be laid out and changed. Held to be constitutional in *Jefferson* v. *Arrighi, supra.*

In *Kinnare* v. *Gregory*, 55 Miss. 612, our supreme court says that this statute was not designed to interfere with or prohibit common law methods of granting the easement of highways, but the plain intendment was to define a method by which the county or state could compel the private owner to yield the easement to the public. In *Ham* v. *Levee Board*, 85 Miss. 534, *et seq.*, our supreme court held that the power of that board to build levees included the power to obstruct drainage, and that the court could not, in the absence of bad faith undertake to control the action of the board, touching matters committed to its discretion. *Monroe County* v. *Strong*, 78 Miss. 565, was an appeal by certain tax payers of the county from an order of the board of supervisors making certain contracts for the building of bridges, and in that case our supreme court said: "Several of the objections set out in the protest of the tax payers relate to the expediency of the proposed action of the board, and much evidence was introduced for the purpose of showing that the bridge was not a public necessity and was not demanded by any consideration of the public interest. These objections cannot be considered. Courts will not interfere with boards of supervisors in the lawful exercise of the jurisdiction committed to them by law on the sole ground that their actions are characterized by lack of wisdom and sound discretion." *Citing Rotenberry* v. *Yallobusha County*, 67 Miss. 470. The last mentioned case was a bill filed by tax payers to enjoin the board of supervisors from making a contract for the building of a new courthouse. In sustaining the action of the chancellor in dissolving the temporary injunction granted, Chief JusticeWoods, in delivering the opinion of the court, says:

"Looking at the entire case we see nothing but the question of the jurisdiction of the chancery court over

the lawful exercise of the powers belonging under the Constitution and laws to the board of supervisors exclusively. The power of the board of supervisors over Court houses and sites for courthouses is complete and exclusive in this, and no interference with the exercise of this power by the chancery court can be upheld so long as the power is alleged to be only exercised unwisely and without discretion. No court would be permitted to invade the province of the board of supervisors and undertake to direct the board's discretion or judgment in the exercise of its undisputed power." In 2 High on Injustice, section 1311, it is said that the courts of equity will not enjoin public officers in the exercise of their discretion as to public roads. See, also, ibid, sec. 1325. See, also, 22 Cyc. 879, 882 and 883, where it is expressly said that highway officers will not be enjoined in the exercise of their discretionary powers. Section 4415 of the Code expressly gives to the board of supervisors the power to specify the bridges to be built, the hills to be cut down and the other work to be done. When it is observed from the bill that the contract which is specifically enjoined in this case is shown on the face of the bill to have been advertised on legal plans and specifications, properly filed and to have been let to the appellant, Rivers, in the manner provided by law, we submit that under the author ities cited, and the rule in this state, the chancery court has no jurisdiction to enjoin the work, simply because of an allegation in the bill that some lands of the complainants on the other side of Coldwater River from the proposed work will be damaged by being subject to be more greatly innundated by the overflow waters of Coldwater River. Our contention is that if the allegations of the bill as to damages are true, that that does not of itself authorize the chancery court to interfere with the discretion of the Board of supervisors by injunction, but is a matter in which complainant's have a full and adequate remedy at law. The appellee relies upon the case of the

*Board of Supervisors of Leflore County* v. *Cannon*, reported in 33 So. 81, but we submit that that case is not in point with the case at bar.    It is true that the court says that under the Constitution and the laws neither municipalities, nor counties, nor the sovereign state itself can damage the humblest individual in violation of the maxim quoted in the opinion, except in the lawful exercise of the right of eminent domain, and then not without previous compensation ascertained by lawful methods, but the court will observe that in the Cannon case the grounds of the injunction were that the order of the board for the building of a levee or dam across Burr Bayou neither directed the advertisement for sealed bids upon the contract to be let, nor directed that the contract should be let at public outcry at the door of the court house, nor did it state distinctly the thing to be done or invite sealed proposals to be filed with the clerk or elsewhere, and there were no plans and specifications filed with the clerk before the advertisement or the letting of the contract was public.

All these things rendered the contract in question in the Cannon case void, but there are no such objections to the contract in the case at bar.    On the contrary the bill shows on its face that the bids were advertised according to law, that full plans and specifications were filed with the clerk before advertisement, and that thereafter, in strict accordance with the law, this contract in the case at bar was let to, and made with the said L. N. Rivers by the board of supervisors.

That the fact that an individual would be damaged by the execution of the contract was only of effect in the Cannon case, in so far as it gave that individual the right to enjoin the board and the contractor if the work was not about to be done in the manner provided by law.

Surely the court did not mean to hold that before the board of supervisors can build a causeway in a public road or levee partly across a slough in lieu of a bridge on

its roads over which it had exclusive jurisdiction under the Constitution, and in which it has long ago acquired the right of eminent domain, as shown by the bill, for the bill shows that the work is in the public road; it must first ascertain, in advance of the work, whether any one on the other side of Coldwater River or elsewhere will be likely to be damaged by the overflow water being deepened on his land, and pay him for this preconceived damage before they can do the work.

This would impose too great a burden on the board of supervisors. They couldn't build a causeway or levee of this kind in the public road at all without first having a topographical survey of all the country for miles around made, to ascertain what effect this causeway or levee would have on the surface water in the wet season when the streams were up, and then endeavoring to agree with the owners of all these lands as to compensation, in advance. Surely the court did not mean that the board could bear such a burden as this, and yet, if the appellee's construction of the Cannon case is correct, this is exactly what the board would have to do, if they could do it, or else when they undertook to construct a causeway or levee they would be taking the chances that some land owner would enjoin them upon an allegation that his lands would be overflowed by it.

*P. H. Lowrey* for appellees.

The contention of the complainants was and is:

First. That the board of supervisors, nor any one acting under their authority, has any right to dam up, by levees such as here provided for, large natural water courses, such as those described in the bill, under any circumstances. That the right of eminent domain given to the board of supervisors does not authorize them to completely dam up and stop natural water courses of this character.

Second.   That even if the board of supervisors under
its constitutional authority and jurisdiction over roads,
ferries and bridges, have the right to do that which they
are undertaking to do in this case it can only be done after
due compensation for damages to parties injured, ascer-
tained according to the statute and first paid.   Section
170 of the Constitution does not authorize the board of
supervisors to exercise the right of eminent domain.   This
could only be done by statute.   We have many statutes
authorizing the exercise of this right and in no other cases
or way can it be exercised.   Sections 4400, 4401 and 4402
authorize the board of suprevisors to lay out, alter and
change public roads and provided the manner in which
it shall be done.   These provisions apply to nothing else
This is evident from the fact that the board is authorized
by sections 394 and 395 to make certain changes and cer-
tain improvements on a certain class of roads.   Section
395 in express terms confers upon the board the right of
eminent domain for the purpose there mentioned and
also provides that it shall be exercised under the general
statute on eminent domain.   Section 2824 of the Code
confers upon the board the power of eminent domain in
laying out and establishing steam boat landings, etc.,
and section 2826 provides the manner of exercising this
power.   Chapter 97 of the Code provides for the right of
eminent domain in condemnation of mill sites, etc., and
provides the manner in which it shall be done.   Section
1854, being the first section of chapter 43 of the Code,
provides for the manner of exercising the right of eminent
domain generally where that right exists and says that it
shall be excercised in no other way except as specified in
the statutes heretofore referred to.   It will hardly be
disputed, and I understand is not disputed in this case,
that the complainants, if damaged, are entitled to com-
pensation.   Then if they are entitled to compensation
they are entitled to have their compensation ascertained and
paid in advance.   Now our contention is that there is

no provision anywhere for the board of supervisors to ascertain or allow the damages in a case like this.    It certainly cannot be done under section 4402 because that section goes back to sections 4400 and 4401 and provides that claims for damages must be made on the coming in of the report under these former sections.    If the board of supervisors proceed under these sections, then it must be done in the way there provided by petition of ten free holders, etc.    It seems perfectly clear that the provisions for laying out, altering and changing roads in section 4400 do not include and cannot be made to include the building of a levee across a bayou such as that described in the bill.

If we are right on this contention that the board has no authority in any event to obstruct a natural water course in the manner here undertaken, then there can be no possible doubt of complainants' right to an injunction to stay their effort to do so.    If, however, the board of supervisors under the authority granted them by the Constitution have the right, by proper proceeding, to obstruct a watercourse in this way, they certainly cannot do so in violation of section 17 of the same Constitution which gives them this right.    The bill in this case sets these proceedings out in detail, giving each order of the board, showing that the board is not proceeding under its right of eminent domain in any of the ways provided and states that the consequences will be irreparable damage to the complainants, if they are allowed to proceed. One ground of defendants' demurrer to the bill, being the last ground stated, is that the obstruction complained of is a public nuisance and that complainants show no such individual damages as to authorize the injunction at their instance.    The principle invoked being, as I understand it, that a private party cannot abate a public nuisance without showing special damage.    Much learning has been exhausted in the discussion of this question and there is a conflict of authorities.    Some jurisdictions

go much further than others and the rule seems to be different in different states. The courts of this state seem to have put this question at rest in many decisions. I think it is sufficient to cite the cases of *Whitfield* v. *Rodgers*, 26 Miss. 84; *Canton Warehouse* v. *Potts*, 69 Miss. 31; *Pascagoula Boon Co.* v. *Dixon.* 77 Miss. 587. We have many other authorities to the same effect, some of which will be hereafter referred to on other points, but it seems to me these are sufficient. If the board of supervisors were proceeding unlawfully, whether they had no right under any circumstances to do the thing undertaken or whether they had the right to do it only after compensation first ascertained and paid to injured parties, the remedy by injunction is proper. This principle was early decided in this state and has been followed without variation so far as my investigation goes. *Stewart* v. *Railroad Co.*, Smedes & Marshall, p. 568; *Railroad* v. *Federick*, 46 Miss. 1; *Learned* v. *Hunt*, 63 Miss. 373; *Ferris* v. *Wellborn*, 64 Miss. 29; *LeFlore County* v. *Cannon*, 81 Miss. 334.

Appellants in their brief seem to take the position that the board of supervisors, having constitutional jurisdiction over roads, ferries and bridges, which may be regulated by the statute but not taken away, have the right to do anything they see proper in the construction of public roads without regard to the damage done others. That so long as they are dealing with roads no court has any right to interfere with their conduct. The very authorities they cite seem to me to refute their contention. If the board of supervisors have the right under their power of eminent domain to construct an obstruction such as those here complained of, in a natural water course, and if they were proceeding to exercise that right and condemn the property the authorities cited might be applicable. The chancery court would have no right by injunction to interfere with their judgment and discretion; but where the board is proceeding to do an unlawful thing or in an unlawful way, as in this case, these authorities do not fit.

Neither the case of *Cage* v. *Trager*, 60 Miss. 563, nor *Ham* v. *Levee Board*, 83 Miss. 534, 35 So. 943, nor any of the other cases cited authorizes the board of supervisors, or any other authority to take or damage private property, without first ascertaining and paying the compensation. These cases simply hold that certain ways of ascertaining this damage provided by the legislature are not violative of the Constitution. There are some decisions holding that damages, where they are consequential need not be ascertained or paid, and that the property may be taken or damaged and damages afterwards ascertained and paid; but I think it will be found that in the states so holding either the Constitution does not prohibit the damaging of private property for public use, or does not require that the payment precede the taking. For example the discussion in 15 Cyc. 781, and the doctrine there stated applies in those states where the word "damage" does not appear, and some of the other authorities apply where the compensation is not required to be first paid. 15 Cyc. 655 776. This court has clearly brought out these distinctions in the case of *Richardson* v. *Levee Commissioners*, 77 Miss. 518.

The very case of *McHan* v. *Railroad Co.*, 6 So. 640, 41 La. 827, was cited and relied upon by the appellee in that case, page 532, and is expressly disapproved in the opinion at page 537. Also the fact that the Illinois Constitution does not require payment to precede the taking is there shown. It will also be noticed that the opinion in the Missouri case relied upon, 67 L. R. A. 362, follows this Louisiana case (page 367) which is expressly disapproved by our court. Along this line I also refer the court to *A. & V. R. R. Co.* v. *Bloom*, 71 Miss. 247; *Vicksburg* v. *Herman*, 72 Miss., p. 211.

The case of *Rainey* v. *Hinds County*, 78 Miss. 308, also sustains our contention. This case seems to be relied upon by the appellants as authority for their contention that the remedy at law is adequate. This case does not

103 Miss. 22

so decide. It does decide that under section 17 of the Constitution the plaintiff had a right to recover the damage to his property and that he could recover it in this action but it is far from holding that this was his only remedy. If the plaintiff had the right to recover the damages then he had a right to have the damages paid before the taking, or in case it was not so paid to enjoin the taking.

Argued orally by *F. A. Montgomery*, for appellants and *A. W. Shands*, for appellees.

REED, J., delivered the opinion of the court.

The appellees, owners of land on the east bank of the Cold Water River, filed their bill against the appellant, seeking an injunction restraining the construction of a levee or dam across a certain bayou running out from the west side of the river, and also praying that, upon the final hearing, a dam or levee already constructed across another bayou should be ordered removed.

It is shown that the Cold Water River is navigable, flowing from the hills of this state into the bottom lands. The river, along and near appellant's land, flows in a slow, sluggish way, because of the flat lands and the slight fall in the stream. There are many low places and bayous running out from the west side of the river, through which the waters when high, flow, and by which means much of the surplus waters, when there are overflows, are disposed of. These bayous are natural watercourses, and the water, accustomed to escape through them, flows west in times of overflow. One of these bayous, Bookter Bayou is described as being three hundred feet wide and about sixteen feet deep. The board of supervisors of Quitman county, one of the appellants, let a contract to L. N. Rivers, appellant, for the construction of a levee across Bookter Bayou, the building of which would prevent the water of Cold Water River from flowing into the bayou.

Appellees charged in their bill that the construction of this levee across Bookter Bayou will greatly increase the amount of overflow water on their lands situated on the east side of the river, will largely depreciate the value of the lands by reason of excessive and repeated overflows, and will cause great and irreparable injury thereto. and that the damage to the land by reason of the construction of the levee across the bayou will be continuous and perpetual, if the bayous, which are outlets for the waters of the river in time of overflow, are obstructed by dams or levees. Upon the bill an injunction was granted, a demurrer was filed to the bill, and then a motion to dissolve the injunction which motion was overruled, and an appeal taken.

The appellants contend that the board of supervisors is vested by law with full jurisdiction over roads and bridges, as provided in section 170 of the present Constitution of this state, and that this gives them power to build causeways or levees; that the board is vested with discretion in such matters, and is authorized to construct the levee across Bookter Bayou.   It is true that the board of supervisors has been given full jurisdiction over roads and bridges by section 170 of the Constitution, which is to be exercised in accordance with such regulations as the legislature may prescribe; but it can hardly be construed that the board, under the authority given in this section of the Constitution, is given power to construct levees across watercourses, whereby the natural flow of the water will be prevented.   The legislature has provided the proper regulations for the guidance of the board relative to roads and bridges.   Section 4449 of the Code of 1906 refers to work on causeways.   A causeway, however, is different from a levee.   It may be necessary, in building roads through lowlands, to raise the roadbed, and when so raised it is known as a causeway; but even in the case of a causeway going through such lands, when it reaches a bayou, a bridge would and should be constructed over the bayou for the continuance of the road.   In the pre-

sent case the bill shows that the board of supervisors entered into a contract for the construction of a levee, and not a causeway. The allegations of the bill, which are confessed by the demurrer, control in this case. We do not find any provision in the laws of this state giving the board of supervisors power to so construct levees.

It is settled in this state that the chancery court has jurisdiction to grant an injunction to restrain a person from damming a bayou, or other natural outlet, where the injury resulting from such obstruction is manifest and continuous, or constantly recurring, and the right to relief in the matter is clear. In the case of *Learned* v. *Hunt*, 63 Miss. 373, COOPER, C. J., in discussing this subject, said: "The character of the injury inflicted upon the complainants' land by reason of the obstruction by the locks and gates placed by the defendants in the stream, by which the overflowing waters of the river are returned to it, warrants the interposition of a court of equity to prevent the injury by the writ of injunction. It is true that ordinarily the complainant is required to establish the fact of injury by an action at law before a court of equity will interfere; but where, as in this case, the injury is manifest, the right clear, and the nuisance a continuing one, or of a constantly recurring character, and satisfaction can only be had by repeated suits at law, a court of equity is the appropriate tribunal to relieve, since once for all the right may be established and protected."

It cannot be said that the board of supervisors are proceeding in this case under the right of eminent domain. Nothing has been done looking to the ascertaining and paying to the appellees the amount of compensation to which they would be entitled, which is required by section 17 of the Constitution. And it cannot be said that the appellees have not shown such individual and special damages arising from the construction of the levee as to give them the right to proceed to abate what might be claimed to be a public nuisance.

The particular rights of the appellees and the special injury they will sustain, as averred in the bill, entitles them to injunction in this case. *Pascagoula Boom Co.* v. *Dixon*, 77 Miss. 587, 28 So. 724, 78 Am. St. Rep. 537. In discussing the subject of the power of the chancery court to grant an injunction for the purpose of restraining or abating an obstruction in a water course, we find the following in 40 Cyc. 591:. 'A court of equity may give relief by injunction against an obstruction of a watercourse, and this remedy is available, not only to restrain the continuance of an obstruction already constructed, but also to prevent the erection of an obstruction which is threatened. It is not generally necessary for the complainant first to establish his rights by an action at law, and although he must allege some substantial and appreciable injury to his rights, either present or prospective, he is entitled to a decree for their vindication, as well as for their preservation, and hence need not prove actual damages. Complainant must, of course, show an irreparable injury, present or threatened, for which an action at law will not furnish an adequate remedy; but a showing that he could not avoid injury without large expense and without himself maintaining a nuisance is sufficient. The court may adjust its decree to the rights of the parties, by so regulating the use of the stream as to secure to all the privileges to which they are entitled, or may in a proper case order the removal of the obstruction complained of.''

It is contended by appellants that the appellees' remedy is at law and not in equity. We believe it will appear clear from what we have said that they are wrong in this contention. The bill of appellees makes the charge that they would sustain an irreparable injury unless the injunction is granted, and they show that the action at law would not furnish an adequate remedy to them. Our courts have been careful in preserving the rights of riparian owners in watercourses. In the case of *Liles* v. *Caw-*

thorn, 78 Miss. 559, 29 South. 834, it is stated: " 'Water runs, and ought to run, as it was wont to run,' is a principle of the common law. Every proprietor of the soil through which a stream passes, has a right to have it run in its natural current without diminution or obstruction."

The facts in the case of *Leflore County* v. *Cannon*, 81 Miss. 334, 33 So. 81, are very much like those in the present case. In that case it was decided that a county, not proceeding in the lawful exercise of the right of eminent domain, may be enjoined from obstructing a stream by complainant, who will suffer irreparable special damage should the obstruction be permitted. CALHOON, J., in delivering the opinion of the court said: " '*Aqua currit et debet currere u tcurrere solebat*,' is a maxim as old as the common law on waters. This shows that the board was about to dam up a stream known as Burr Bayou, where the water, left alone, would run as it ought to run, and was used to run from time immemorial. By this dam irreparable injury would have been inflicted, as the bill charges and the demurrer admits, on the complainants. Under our Constitution and laws neither municipalities, nor counties, nor the sovereign state itself, can damage the humblest individual, in violation of the maxim, except in the lawful exercise of the right of eminent domain, and then not without previous compensation ascertained by lawful methods. This is true, regardless of the benefit to the public at large."

The water of Bookter Bayou should be permitted to run "as it was wont to run." The chancellor was correct in overruling the motion to dissolve the injunction.

*Affirmed.*