PALMER, et ux. *v.* MASSENGILL, et al.

May 19, 1952.

No. 38378 (58 So. (2d) 918)

Ely B. Mitchell, and Stovall & Smith, for appellants.

**W. C. Sweat,** and **J. S. Finch,** for appellees.

384

**Alexander, J.**

The action is in tort for the recovery of damages to land and crops allegedly caused by the wrongful act of the appellees in constructing a dam across their lands whereby the adjacent lands of appellents were flooded. From a verdict and judgment for the defendants, this appeal is taken.

From a voluminous record the following facts may be gleaned. Appellants own lands lying south of that of appellees and the trend of drainage is generally northward. The area in which all these lands are located is

served by the Tuscumbia Canal which was constructed along the general course of the Tuscumbia River in Alcorn County. This canal, which flows northward, is intersected at several points by cross ditches, one of which, known as Hinkle Canal, drains northwestwardly into the Tuscumbia Canal on its west side. One count of the declaration is based upon the claim that appellees had unnecessarily dug another canal south of the Hinkle Canal, thereby so accelerating the floodwaters on the west side as to cause the water to cross the canal and overflow plaintiffs' lands.

The dam, which was built by appellees, was about thirty-five feet at its base and approximately seven feet high. It was constructed upon the south side of appellees' lands just north of the line between the parties. It ran from the Tuscumbia Canal on the west and extended east for a considerable distance near the north line of appellants' lands. Its course intersected a slough in crossing which no bridge was built, but there was laid a four-inch tile drain to take care of such water as may collect in this slough.

An important factor in the picture is a stream or natural watercourse which came out of the hills to the southeast of the Palmer lands, and which formerly had been drained across the lands westwardly into the Tuscumbia Canal. This was sought to be accomplished first by a ditch which was found to be partly on the Massengill land. A second was constructed which, like the first, drained into the canal. There is a dispute whether the drainage from these ditches went into the slough or into the canal. A third so-called dragline ditch was cut by appellants which eliminated a sudden deviation of the course of the stream southwestward and projected its flow in a more direct line. This dragline ditch was about 950 feet long. It was not extended to the canal and there is a factual issue whether it extended to the bed of the slough or was left open at its west end, thereby casting its flow upon the surface of the land and overflowing the land of the appellees. On this issue

there was testimony that it was extended to the slough by an inconsequential continuation constructed by hand. Appellees testified that the waters were cast at large upon the surface of the Palmer land just north of the Massengill tract, and that the latter built the dam to fend off these vagrant waters.

The slough followed a course generally northward, and the issue whether it was a natural watercourse was sharply conflicting. We need not detail the evidence supporting the respective contentions. The issue was important, however, inasmuch as its identity as a natural watercourse would require the application of established legal principles. The course of the slough was north and practically parallel with the canal and at right angles to the dragline ditch and the dam.

The dam impounded floodwaters to a depth of about seven feet. It gave way in several places and was rebuilt. In its construction a ditch or borrow pit was dug along its north side. Appellants contend that this ditch could have been as easily and economically placed upon its south or upper side, thereby draining all the waters on the Palmer land, including any caused by the dragline ditch, into the canal, and that, therefore, it was the duty of appellees to so construct it as to minimize the damage to them.

The assignments of error are directed chiefly to the giving and refusing of instructions which purported to inform the jury of the respective rights and duties of the parties.

We examine first the instructions dealing with the slough as a natural watercourse. If it is such, ██ it may not be destroyed or altered to the damage of the upper owner. Liles v. Cawthorn, 78 Miss. 559, 29 So. 834; Ferris v. Wellborn, 64 Miss. 29, 8 So. 165; Board of Supervisors of Quitman County v. Carrier Lbr. Co., 103 Miss. 324, 60 So. 326. ██ A natural watercourse is one which has a well defined bed and banks of varying

width and depth, through which water is conveyed and discharged into some substantial reservoir or body of water. Ferris v. Wellborn, supra; Belzoni Drainage Commission v. Winn, 98 Miss. 359, 53 So. 778. It is not necessary that there be a continual flow.

With these principles in mind as well as the fact of a conflict in testimony on the point, we quote the following instruction: "The Court instructs the Jury for the Defendants that unless the old slough has a continuous channel, well defined, and well defined banks from Plaintiffs' land to Tuscumbia Canal, it is not a natural watercourse." The objection is that it restricts the requirement that it must ultimately empty into some body of water. Yet, the answer filed by the appellant alleged that this slough does drain into this canal. Moreover, a witness for appellant stated this to be a fact. There was no contention that it emptied into any other body of water. The assignment is not well taken.

There was no error in refusing instruction number eight requested by the appellants, since it assumed that the slough was a natural watercourse.

Instruction number five requested by appellants is as follows: "The Court instructs the jury for the Plaintiffs that the Defendants had no legal right to construct a dam on the south side of their land adjoining the north boundary line of the Plaintiffs' land so as to throw the water back on the land of the Plaintiffs." It was properly refused since it is peremptory in its assumptions that the slough was a natural watercourse which could not legally be obstructed, and that there was no authority for, but negligence in, the construction of the dam.

Other instructions properly presented the factual issue whether the dam was reasonably and not negligently constructed, and whether the placing of a four-inch tile where it crossed the bed of the slough was reasonable.

The following considerations lead to the conclusion that the instructions given to both parties substantially informed the jury as to the applicable legal principles,

and that the charges refused to the appellants were inapplicable or covered by those given.

In Holman v. Richardson, 115 Miss. 169, 76 So. 136, L. R. A. 1917F, 942 and Steed v. Kimbrough, 197 Miss. 430, 19 So. (2d) 925, we have held that ██ a lower proprietor may fend surface waters in a diffused state by any reasonable means which do not result in impeding or obstructing such natural flow or cause it to back up or be impounded upon the lands of the upper proprietor to his greater damage. The Holman case dealt only with damage by surface waters, and the Steed case reannounces the principle that ██ one in the position of appellants may not, by building an artificial channel, cast upon one in the position of appellees a greater or more concentrated flow than would otherwise have resulted. Whether and to what extent in the instant case the dam impounded vagrant surface waters is not shown. The jury was amply justified in its finding that there was a greatly increased flow cast upon the surface and onto the lands of appellees by the digging of the dragline ditch by appellants.

██ There remains the inquiry whether the jury were authorized to resolve the issues as to the reasonableness of the construction of the dam as a defense against an artificially accelerated flow cast upon the lands of the appellees by the appellants.

If the damage was caused by the building of the dam to fend waters cast upon appellees by the dragline ditch, the only remaining issue of fact is whether it was reasonably constructed. If such was found to be the case, there was no duty upon appellees to serve the interest of appellants by giving to them a drainage ditch to protect them against the consequences of a wrong committed by them. In this connection, there was a dispute whether appellees offered to place the ditch on the south side of the dam if appellees would share the expense. The instructions properly submitted the right of appellees to protect their lands by a dam reasonably built

in order to fend an increased flow resulting from the diversion of a natural watercourse. As stated in the early case of Crabtree v. Baker, 75 Ala. 91, 51 Am. Rep. 424: "If it be apparent that the dam or embankment has increased the quantity of water which may flow or stand upon the roads or lanes referred to in the original bill, and that it is of peculiar injury to the complainants, they are not now in a condition to complain of it. They are the original wrongdoers, and the injury is one of the results of their wrongful act in flooding the lands of the defendant." See also Farnham, Waters and Water Rights, Sec. 887, page 2579. This is not a case involving the duty of a lower proprietor to select a method of defense most favorable to the upper owner. Compare Board of Drainage Commissioners, etc., v. Board of Drainage Commissioners. et., 130 Miss. 764, 95 So. 75, 28 A. L. R. 1250, and Toler v. Bear Creek Drainage District, 141 Miss. 851, 106 So. 88. The latter case, as well as Holman v. Richardson, supra, dealt chiefly with surface waters. The instructions, as well as our discussion, relate in like manner to both counts of the declaration.

We have examined all the assignments and find that the issues were not improperly submitted to the jury and that its verdict is supported by the testimony.

Affirmed.

**Roberds, P. J.,** and **Hall, Holmes** and **Arrington, JJ.,** concur.